**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EMPIRE GENERATING CO, LLC, *et al.*, [1] | ) Case No. 19-[_____] (___) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

---

### DEBTORS' JOINT CHAPTER 11 PLAN

---

Peter S. Partee, Sr.
Robert A. Rich
Michael S. Legge
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
ppartee@huntonak.com
rrich2@huntonak.com
mlegge@huntonak.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

Michael P. Richman
**STEINHILBER SWANSON LLP**
122 West Washington Avenue, Suite 850
Madison, Wisconsin 53703
(608) 709-5998
mrichman@steinhilberswanson.com

*Proposed Co-Counsel for Debtors and Debtors-in-Possession*

Dated:  May 19, 2019

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, if applicable, are:  Empire Generating Co, LLC [3821], Empire Gen Holdco, LLC [3820], Empire Gen Holdings, LLC [4849], and TTK Empire Power, LLC [none].    The Debtors' corporate address is: Empire Generating Co, LLC, c/o Tyr Energy, LLC, 7500 College Blvd., Suite 400, Overland Park, Kansas 66210.

# TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................................... 1

ARTICLE I

DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
GOVERNING LAW, AND OTHER REFERENCES ............................................... 1
1.1   Defined Terms ........................................................................................................ 1
1.2   Rules of Interpretation ......................................................................................... 15
1.3   Computation of Time ............................................................................................ 15
1.4   Governing Law ..................................................................................................... 15
1.5   Reference to Monetary Figures ............................................................................ 16
1.6   Reference to the Debtors or the Reorganized Debtors ......................................... 16

ARTICLE II

ADMINISTRATIVE, PROFESSIONAL AND PRIORITY CLAIMS ........................ 16
2.1   Administrative Claims .......................................................................................... 16
2.2   Professional Claims .............................................................................................. 16
2.3   Priority Tax Claims .............................................................................................. 17

ARTICLE III

CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS ............ 17
3.1   Classification of Claims and Interests .................................................................. 17
3.2   Treatment of Classes of Claims and Interests ...................................................... 18
3.3   Subordination ....................................................................................................... 21
3.4   Special Provision Governing Unimpaired Claims ............................................... 21
3.5   Elimination of Vacant Classes ............................................................................. 21

ARTICLE IV

PROVISIONS FOR IMPLEMENTATION OF THE PLAN ....................................... 22
4.1    General Settlement of Claims .............................................................................. 22
4.2    Section 1145 Exemption ...................................................................................... 22
4.3    Vesting of Assets in the Reorganized Debtors .................................................... 22
4.4    New Organizational/Governance Documents ...................................................... 22
4.5    Management Incentive Plan ................................................................................. 23
4.6    Amended O&M Agreement ................................................................................. 23
4.7    Amended Emera Agreements ............................................................................... 23
4.8    Other Material Agreements .................................................................................. 23
4.9    Dissolution of TTK Empire ................................................................................. 23
4.10   Cancellation of Instruments, Certificates, and Other Documents ....................... 23
4.11   Execution of Plan Documents .............................................................................. 24
4.12   Limited Liability Company Action ...................................................................... 24
4.13   Effectuating Documents; Further Transactions .................................................... 25
4.14   Section 1146(a) Exemption .................................................................................. 25
4.15   Managers, Directors and Officers ........................................................................ 25
4.16   Preservation of Rights of Action ......................................................................... 26
4.17   Release of Avoidance Actions ............................................................................. 26
4.18   Payment of Fees and Expenses of the Prepetition Agent ..................................... 27

ARTICLE V

                    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................27
        5.1    Assumption of Executory Contracts and Unexpired Leases ...........................................27
        5.2    Cure of Defaults and Objections to Cure and Assumption ............................................28
        5.3    Pre-existing Payment and Other Obligations ................................................................29
        5.4    Rejection Claims and Objections to Rejection Claims...................................................29
        5.5    Contracts and Leases Entered Into After the Petition Date............................................29
        5.6    Reservation of Rights Regarding Contracts and Leases..................................................29
        5.7    Termination of the Asset Management Agreement as of the Effective Date ..................30

ARTICLE VI

                    PROVISIONS GOVERNING DISTRIBUTIONS ..............................................................30
        6.1    Distributions on Account of Claims and Interests Allowed as of the Effective Date ..........30
        6.2    Special Rules for Distributions to Holders of Disputed Claims and Interests................30
        6.3    Delivery of Distributions ..............................................................................................31
        6.4    Claims Paid or Payable by Third Parties........................................................................33
        6.5    Setoffs ...........................................................................................................................34
        6.6    Allocation Between Principal and Accrued Interest .......................................................34
        6.7    Manner of Payment under Plan ......................................................................................34
        6.8    Minimum Cash Distributions.........................................................................................34
        6.9    No Distribution in Excess of Amount of Allowed Claim ...............................................35

ARTICLE VII

                    PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS..................35
        7.1    Disputed Claims Process................................................................................................35
        7.2    Prosecution of Objections to Claims and Interests.........................................................35
        7.3    No Interest......................................................................................................................35

ARTICLE VIII

                    EFFECT OF CONFIRMATION OF THE PLAN .............................................................36
        8.1    Discharge of Claims and Termination of Interests.........................................................36
        8.2    Releases by the Debtors .................................................................................................36
        8.3    Third Party Releases ......................................................................................................37
        8.4    Exculpation ....................................................................................................................38
        8.5    Injunction.......................................................................................................................38
        8.6    Protection Against Discriminatory Treatment ...............................................................38
        8.7    Indemnification ..............................................................................................................39
        8.8    Recoupment ...................................................................................................................39
        8.9    Release of Liens .............................................................................................................39

ARTICLE IX

                    CONDITIONS PRECEDENT .........................................................................................39
        9.1    Conditions Precedent to Confirmation...........................................................................39
        9.2    Conditions Precedent to the Effective Date. ..................................................................40
        9.3    Waiver of Conditions Precedent ....................................................................................41
        9.4    Effect of Non-Occurrence of Conditions to Consummation ..........................................41

ARTICLE X

                    MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ...................41
        10.1   Modification of Plan ......................................................................................................41

10.2    Revocation or Withdrawal of Plan ........................................................................................42
10.3    Confirmation of the Plan ......................................................................................................42

ARTICLE XI

        RETENTION OF JURISDICTION .........................................................................................42

ARTICLE XII

        MISCELLANEOUS PROVISIONS ........................................................................................44
12.1    Additional Documents ..........................................................................................................44
12.2    Payment of Statutory Fees ....................................................................................................44
12.3    Reservation of Rights............................................................................................................44
12.4    Successors and Assigns.........................................................................................................45
12.5    Service of Documents ...........................................................................................................45
12.6    Term of Injunctions or Stays ................................................................................................47
12.7    Entire Agreement ..................................................................................................................47
12.8    Plan Supplement Exhibits .....................................................................................................47
12.9    Non-Severability ...................................................................................................................47
12.10   Substantial Consummation of the Plan .................................................................................47
12.11   Dates of Actions to Implement the Plan................................................................................48
12.12   Deemed Acts..........................................................................................................................48

INTRODUCTION

Empire Generating Co, LLC and its Debtor affiliates in the above-captioned chapter 11 cases jointly propose this Plan.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding claims against and interests in each Debtor pursuant to the Bankruptcy Code.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The Plan contemplates no substantive consolidation of any of the Debtors.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### 1.1   **Defined Terms**

1.      "*Administrative Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the business of the Debtors; (b) Allowed Professional Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of Title 28 of the United States Code; (d) Cure Claims; and (e) all other claims entitled to administrative claim status pursuant to an order of the Bankruptcy Court.

2.      "*Administrative Claims Bar Date*" means, unless extended by a Final Order with the agreement of the Consenting Lenders, the first Business Day that is thirty (30) calendar days after the Effective Date.

3.      "*Administrative Claims Objection Deadline*" means, unless extended by a Final Order, the earlier of (i) the first Business Day that is sixty (60) calendar days after the Effective Date, or (ii) in the case of a Professional Claim, the objection deadline established in connection with the Professional's final fee application.

4.      "*Affiliate*" means "affiliate", as defined in section 101(2) of the Bankruptcy Code.

5.      "*Allowance Date*" means, with respect to any Allowed Claim or Allowed Interest, the date upon which such Claim or Interest becomes Allowed.

6.      "*Allowed*" means, with reference to any Claim or Interest, any portion thereof that: (a) has been listed in the Schedules and not listed as contingent, unliquidated or disputed; (b) as to which a Proof of Claim (in the case of a General Unsecured Claim, Rejection Claim, Priority Claim or Secured Claim) has been filed on or before the applicable Bar Date (or is otherwise deemed timely filed in a Final Order of the Bankruptcy Court) and as to which no objection has been or subsequently is filed by the Debtors, the Reorganized Debtors or any other

party in interest with standing prior to the Claims Objection Deadline; (c) an Administrative Claim as to which a request for payment has been filed on or before the Administrative Claims Bar Date (or is otherwise deemed timely filed in a final and non-appealable order of the Bankruptcy Court) and as to which no objection has been or subsequently is filed by the Debtors, the Reorganized Debtors or any other party in interest with standing prior to the Administrative Claims Objection Deadline; (d) has been allowed pursuant to a Final Order of the Bankruptcy Court, including without limitation in any stipulation that is executed by the Debtors, with the consent of the Purchaser, and the holder of such Claim or Interest prior to the Confirmation Date and approved by the Bankruptcy Court in a Final Order, provided, however, unless otherwise specified herein or by a Final Order of the Bankruptcy Court, the term "Allowed Claim" shall not, for any purpose under the Plan, include any interest, penalties, premiums or late charges on such Claim accruing from and after the Petition Date.

7.      "*Amended Emera Agreements*" means the Emera Agreements, as amended or amended and restated in substantially the form annexed to the Plan or Plan Supplement, which shall be in form and substance acceptable to the Purchaser in its sole and absolute discretion.

8.      "*Amended O&M Agreement*" means the O&M Agreement, as amended and restated in substantially the form annexed to the Plan or Plan Supplement, which shall be in form and substance acceptable to the Purchaser in its sole and absolute discretion and NAES.

9.      "*Approved Budget*" shall have the meaning set forth in the Cash Collateral Orders.

10.      "*Asset Management Agreement*" means that certain Management and Oversight Agreement (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), dated as of March 3, 2017, by and between Empire and Tyr Energy, LLC.

11.      "*Assumption Schedule*" means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for assumption as of the Effective Date under section 365 of the Bankruptcy Code.

12.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties-in-interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code.

13.      "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time.

14.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Chapter 11 Cases.

15.      "*Bankruptcy Rules*" means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28 of the

United States Code, (b) the applicable Local Bankruptcy Rules for the Bankruptcy Court and (c) any general or chamber rules, or standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, and each of the foregoing together with all amendments and modifications thereto that are subsequently made and as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

16. "*Bar Date*" means the General Bar Date, the Rejection Claim Bar Date, the Administrative Claims Bar Date, or the Governmental Unit Claims Bar Date, as applicable.

17. "*Bar Date Order*" means the order of the Bankruptcy Court establishing the deadline for filing Proofs of Claim.

18. "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

19. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

20. "*Cash Collateral Motion*" means the motion and the related proposed forms of interim and final orders filed by the Debtors with the Bankruptcy Court seeking, among other things, authority to use cash collateral on an interim and a final basis.

21. "*Cash Collateral Orders*" means the Final Cash Collateral Order and the Interim Cash Collateral Order.

22. "*Causes of Action*" means any and all claims, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of setoff, third party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Persons under the Bankruptcy Code, including Avoidance Actions) of the Debtors or their Estates whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced by the Reorganized Debtors after the Effective Date against any Person, based in law, equity or otherwise, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order. For the avoidance of doubt, a "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defense set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

23. "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

24.      "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

25.      "*Claims Objection Deadline*" means, unless extended by the Bankruptcy Court, for all Claims other than Administrative Claims and Cure Claims, the first Business Day that is thirty (30) calendar days after the later of (i) the Effective Date and (ii) the applicable Bar Date.

26.      "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

27.      "*Closing*" shall have the meaning set forth in the Sale Order.

28.      "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

29.      "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

30.      "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

31.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, which order (and any exhibits, appendices and related documents) shall be in form and substance reasonably acceptable to the Consenting Lenders and to the Debtors.

32.      "*Consenting Lenders*" means those Lenders that are party to the RSA as "Consenting Lenders" thereunder; *provided* that any consent or acceptance required or permitted to be given by the Consenting Lenders under this Plan shall only require such Lenders constituting the Requisite Consenting Lenders, as such term is defined in the RSA.

33.      "*Consummation*" means the occurrence of the Effective Date.  For the avoidance of doubt, "*Consummation*" is distinct from "substantial consummation," which is defined in section 1101(2) of the Bankruptcy Code.

34.      "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon the applicable Debtor's defaults under an Executory Contract or Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default which is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

35.      "*Debtors*" means, collectively, Empire, Holdco, Holdings and TTK Empire.

36.      "*Disallowed*" means with respect to any Claim, or any portion thereof, that such Claim, or such portion thereof, is not Allowed.

37.      "*Disclosure Statement*" means the disclosure statement, including any exhibits, appendices and related documents, for the Plan, as amended, supplemented or otherwise modified from time to time by the Bankruptcy Court or otherwise, that describes the Plan.

4

38. "*Disputed*" means a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim and shall include, without limitation, any Claim that either (a) was listed in the Schedules as disputed, contingent and/or unliquidated or (b) is the subject of a timely objection filed before the Administrative Claims Objection Deadline or the Claims Objection Deadline, as applicable.

39. "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Reorganized Debtors, on or after the Effective Date, upon which the Reorganized Debtors or their duly appointed disbursing agent shall make distributions to holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

40. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Section 9.2 have been satisfied or waived in accordance with Section 9.2, which date shall be no later than August 30, 2019, unless the Debtors, the Purchaser, and the Consenting Lenders agree otherwise.

41. "*Eligible Equity Holder*" means any Person that was a direct or indirect holder of equity in TTK Empire as of the Petition Date and that (a) has not (or continued to do any of the following to the extent commenced prior to the effective date of the RSA) proposed, supported, assisted, engaged in negotiations in connection with or participated in the formulation of, any restructuring or reorganization of the Debtors other than the transactions contemplated herein, since the effective date of the RSA, (b) has supported the confirmation of the Plan and used reasonable best efforts to take, as applicable, all actions necessary to facilitate, effectuate and promptly consummate the Plan and (c) is deemed to have provided a release as a Releasing Party as set forth in Section 8.3. "Eligible Equity Holders" shall consist of each of the Entities identified on Schedule 1 hereto unless any party-in-interest files a motion objecting to any such Entity's inclusion on Schedule 1 hereto with the Bankruptcy Court at or prior to the Confirmation Hearing and the Bankruptcy Court determines, by a preponderance of the evidence, in a Final Order (which may be the Confirmation Order), that any such Entity identified on Schedule 1 hereto does not meet the definition of Eligible Equity Holder.

42. "*Emera*" means Emera Energy Services, Inc.

43. "*Emera Agreements*" means, collectively, (a) the International Swap Dealer Association Master Agreement, dated April 1, 2010, between Empire and Emera, (b) the Amended and Restated Schedule to the International Swap Dealer Association Master Agreement, dated as of April 1, 2011, (c) the Amended and Restated Credit Support Annex, dated as of April 1, 2011, (d) the Amended and Restated Transaction Confirmation, dated June 1, 2017, between Empire and Emera, and (e) all other documents evidencing or relating to the foregoing, all of the foregoing as may be amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and in effect prior to the effectiveness of the Amended Emera Agreements.

44. "*Emera Liens*" means the Liens on certain of Empire's NYISO accounts receivable and other collateral held by Emera under the Emera Agreements.

45.    "*Emera Secured Claims*" means any and all Secured Claims against Empire held by Emera arising under the Emera Agreements.

46.    "*Empire*" means Empire Generating Co, LLC.

47.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

48.    "*Estate*" means the bankruptcy estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

49.    "*Exculpated Claim*" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in-court or out-of-court efforts to implement the RSA (and all exhibits thereto and documents referenced therein) and the Chapter 11 Cases or the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Purchase Agreement, the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the RSA, the Purchase Agreement, the Disclosure Statement, the Plan, the Plan Documents, the Cash Collateral Orders, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the restructuring efforts of the Debtors, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan.

50.    "*Exculpated Party*" means each of the following in its capacity as such: (a) the Debtors and their Estates, (b) the Reorganized Debtors, (c) Tyr Energy, LLC, (d) NAES, (e) the Consenting Lenders, (f) Ankura Trust Company, LLC, in its individual capacity, (g) the Purchaser, (h) all of the respective successors, assigns and predecessors of each of the foregoing, (i) all Affiliates, subsidiaries, members, management companies, partners, and equity holders (regardless of whether such equity interests are held directly or indirectly) of each of the foregoing (including without limitation the Eligible Equity Holders), and (j) with respect to each of the foregoing, all of their respective predecessors, participants, and current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, fund advisors, advisory board members and other professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; provided, however, that a holder of a direct or indirect equity interest in TTK Empire as of the Petition Date shall be an "Exculpated Party" only to the extent such Person is an Eligible Equity Holder; provided, further, that a Lender shall be an "Exculpated Party" only to the extent such Lender is a Consenting Lender and shall not be an "Exculpated Party" in any other capacity hereunder.

51.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

52.    "*Final Cash Collateral Order*" means that certain *Final Agreed Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 and Rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors' Use of Cash Collateral and (II) Providing Adequate Protection Thereof* [Docket No. [•]] entered on [•].

6

53.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

54.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court, which has not been reversed, stayed, modified or amended and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment could be appealed, or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

55.     "*GAAP*" means generally accepted accounting principles in the United States consistently applied.

56.     "*General Bar Date*" means the deadline established in the Bar Date Order for parties other than Governmental Units to file Proofs of Claim for General Unsecured Claims, Priority Claims, and Secured Claims, unless extended by an order of the Bankruptcy Court with the agreement of the Consenting Lenders.

57.     "*General Unsecured Claim*" means any Claim other than an Administrative Claim (including without limitation Professional Claims), a Priority Tax Claim, an Other Priority Claim, or a Secured Claim (including without limitation the Emera Secured Claim, a PILOT Claim, an Other Secured Claim, a Credit Agreement Claim and a L/C Claim).

58.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

59.     "*Governmental Unit Claims Bar Date*" means the deadline established in the Bar Date Order for Governmental Units to file Proofs of Claim for General Unsecured Claims, Priority Claims, and Secured Claims, unless extended by an order of the Bankruptcy Court with the agreement of the Consenting Lenders.

60.     "*Holdco*" means Empire Gen Holdco, LLC.

61.     "*Holdings*" means Empire Gen Holdings, LLC.

62.     "*Impaired*" means "impaired", as defined in section 1124 of the Bankruptcy Code.

63.     "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

64.     "*Interest*" means any membership (including limited liability company membership interests), stock or other equity ownership interest in a Debtor and all dividends and distributions with respect to such membership, stock or other equity ownership interest and all rights, options, warrants (regardless of when exercised) and other rights to acquire any membership, stock or other equity ownership interest in a Debtor existing immediately prior to the Effective Date.

65.    "*Interim Cash Collateral Order*" means that certain *Interim Agreed Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 and Rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtors' Use of Cash Collateral, (II) Providing Adequate Protection Thereof, and (III) Scheduling a Final Hearing* [Docket No. [•]] entered on [•].

66.    "*L/C Claim*" means a Claim on account of the issuance of a Letter of Credit under the L/C Documents.

67.    "*L/C Documents*" means the cash collateral agreements, reimbursement agreements, and all documents entered by Webster Bank, as issuer of the Letters of Credit, and Empire, as applicant for the Letters of Credit.

68.    "*Lender*" means a lender under the Prepetition Credit Agreement.

69.    "*Letters of Credit*" means, together, that certain (a) Irrevocable Standby Letter of Credit No. 11066 issued by Webster Bank for benefit of the NYPSC and (b) Irrevocable Standby Letter of Credit No. 11073 issued by Webster Bank for the benefit of the Tennessee Gas Pipeline Company, L.L.C.

70.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

71.    "*Loans*" means the loans provided by the Lenders to Empire pursuant to the Prepetition Credit Agreement.

72.    "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Southern District of New York.

73.    "*Management Incentive Plan*" means any management incentive plan established for the benefit of management, managers and other specified persons of Reorganized Empire, Reorganized Holdco and/or Reorganized Holdings, as may be established by the New Board in its sole and absolute discretion and shall be in form and substance acceptable to the Purchaser in its sole and absolute discretion.

74.    "*NAES*" means NAES Corporation.

75.    "*New Board*" means the board of managers of Reorganized Empire, Reorganized Holdco and/or Reorganized Holdings, as applicable.

76.    "*New LLC Agreement*" means the limited liability company agreement governing Reorganized Empire, Reorganized Holdco and/or Reorganized Holdings, as applicable, and the Reorganized Equity Interests of Reorganized Empire, Reorganized Holdco and/or Reorganized Holdings, as applicable, which (a) if the Stalking Horse Bidder is the Purchaser, shall be in form and substance acceptable to the Consenting Lenders in their sole and absolute discretion and (b) if a Person other than the Stalking Horse Bidder is the Purchaser, shall be in form and substance acceptable to such Purchaser in its sole and absolute discretion.

77.    "*New Organizational/Governance Documents*" means the New LLC Agreements and any and all other organizational or governance documents related to Reorganized Empire, Reorganized Holdco and Reorganized Holdings, all of which (a) if the Stalking Horse Bidder is the Purchaser, shall be in form and substance acceptable to the Consenting Lenders in their sole and absolute discretion and (b) if a Person other than the Stalking Horse Bidder is the Purchaser, shall be in form and substance acceptable to such Purchaser in its sole and absolute discretion.

78.    "*NYISO*" means the New York Independent System Operator, the not-for-profit organization that manages New York's electrical grid and its competitive wholesale electric market.

79.    "*NYPSC*" means the New York State Public Service Commission.

80.    "*O&M Agreement*" means that certain Services Agreement, dated as of March 3, 2017, by and between Empire and NAES, as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with its terms and in effect prior to the effectiveness of the Amended O&M Agreement.

81.    "*Other Material Agreements*" means (a) the Pilot Agreements, (b) that certain Extended Parts and Services Agreement, dated as of September 22, 2014 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, including Amendment Number Two dated March 15, 2019), (c) that certain Management and Oversight Agreement, dated as of [●] (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), between Empire and Woodlands Energy Management LLC, and (d) that certain Professional Services Agreement, dated as of [●] (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), between Consolidated Asset Management Services (Texas), LLC and Empire, each of which shall be in form and substance acceptable to the Purchaser in its sole and absolute discretion.

82.    "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

83.    "*Other Secured Claim*" means a claim against the Debtors (a) that is secured by a lien on property in which the Debtors' Estates have an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or (b) that is subject to setoff pursuant to section 553 of the Bankruptcy Code, in either case, to the extent of the value of the creditor's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

84.    "*Person*" means an individual, a partnership, a joint venture, a limited liability company, a corporation, a trust, an unincorporated organization, a group, a Governmental Unit, or any Entity or association.

85.    "*Petition Date*" means the date of the commencement of the Chapter 11 Cases in the Bankruptcy Court.

86.    "*PILOT Agreements*" means, collectively, (a) the Amended and Restated Payment in Lieu of Tax Agreement, dated as of February 1, 2009, by and between Rensselaer County Industrial Development Agency, and Empire (formerly known as Besicorp-Empire Power Company, LLC), (b) the Host Community Benefits Agreement, dated as of December 1, 2004, by and between the City of Rensselaer and Empire (formerly known as Besicorp-Empire Power Company, LLC), (c) the School District Benefits Agreement, dated as of December 28, 2004, by and between the City of Rensselaer School District, and Empire (formerly known as Besicorp-Empire Power Company, LLC), (d) the Amended and Restated PILOT Mortgage and Security Agreement, dated as of February 1, 2009, from Rensselaer County Industrial Development Agency and Empire to Rensselaer County, on behalf of Rensselaer County, the City of Rensselaer, the City School District of the City of Rensselaer, the Town of East Greenbush, the Town of North Greenbush, the Town of Schodack, and the East Greenbush Central School District, and Rensselaer County Industrial Development Agency, and (e) all other documents evidencing or relating to the foregoing, in the case of subsections (a) through (e), each of which shall be in form and substance acceptable to the Purchaser in its sole and absolute discretion.

87.    "*PILOT Claims*" means any and all Claims held by Rensselaer County Industrial Agency against Empire arising under the PILOT Agreements.

88.    "*PILOT Mortgage*" means the Liens on certain of Empire's real property leasehold interests held by Rensselaer County Industrial Agency under the PILOT Agreements.

89.    "*Plan*" means this chapter 11 plan, including the Plan Supplement, all exhibits, appendices and schedules hereto, which are incorporated herein by reference, in either present form or as may be further amended, restated, supplemented or otherwise modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules, in each case reasonably acceptable to the Debtors and (a) if the Stalking Horse Bidder is the Purchaser, the Consenting Lenders and (b) if a Person other than the Stalking Horse Bidder is the Purchaser, such Purchaser and the Consenting Lenders; provided, however, that such amendments, restatements, supplements, or other modifications shall not alter the consent rights provided to the Consenting Lenders; provided, further, that the Plan may not be amended, restated, supplemented, or otherwise modified so as to be inconsistent with the RSA without the consent of the Consenting Lenders.

90.    "*Plan Documents*" means all agreements, instruments, pleadings, orders, forms, questionnaires, or other related documents that are utilized to implement, or effectuate, or that otherwise relate to, the Plan, including, but not limited to, the RSA, the Purchase Agreement, the Plan Supplement, the Amended O&M Agreement, the Amended Emera Agreements, the New Organizational/Governance Documents, the New LLC Agreements, the Disclosure Statement, the Sale Order, and the Confirmation Order.

91.    "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, including, without limitation, the New LLC Agreements and the New Organizational/Governance Documents, which shall be filed

by the Debtors no later than fourteen (14) days prior to the Confirmation Hearing, or such later date as may be approved by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, the contents of which shall be acceptable in form and substance to (a) if the Stalking Horse Bidder is the Purchaser, the Consenting Lenders in their sole and absolute discretion and (b) if a Person other than the Stalking Horse Bidder is the Purchaser, such Purchaser in its sole and absolute discretion.

92.    "*Prepetition Administrative Agent*" means Ankura Trust Company, LLC, in its capacity as successor administrative agent under the Prepetition Loan Documents, and its successors in such capacity (if any).

93.    "*Prepetition Agent*" means the Prepetition Collateral Agent and the Prepetition Administrative Agent.

94.    "*Prepetition Collateral Agent*" means Ankura Trust Company, LLC, in its capacity as successor collateral agent under the Prepetition Loan Documents, and its successors in such capacity (if any).

95.    "*Prepetition Credit Agreement*" means that certain Credit and Guaranty Agreement, dated as of March 14, 2014 (as modified, amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), by and among Empire, as borrower, Holdco and Holdings, as guarantors, Ankura Trust Company, LLC (as successor to Deutsche Bank AG New York Branch), in its capacity as administrative agent and collateral agent, and certain other lenders and parties thereto.

96.    "*Prepetition Credit Agreement Contingent Rights*" means all indemnity, release and exculpation rights of the Prepetition Agent arising under or related to the Prepetition Loan Documents, including (but not limited to) those arising under Sections 9.03, 9.06, and 11.03 of the Prepetition Credit Agreement, Section 6.2 of the Prepetition Security Agreement, Section 6.19 of the Prepetition Pledge Agreement, and Sections 7.3, 7.5, 7.9, and 7.10 of the Prepetition Intercreditor Agreement.

97.    "*Prepetition Credit Agreement Obligations*" means (a) the unpaid principal, interest, fees, expenses, costs, premiums and other amounts arising under or in connection with the Loans under the Prepetition Credit Agreement and (ii) all other "Obligations" as defined in the Prepetition Credit Agreement.

98.    "*Prepetition Intercreditor Agreement*" means that certain Collateral Agency and Intercreditor Agreement, dated as of March 14, 2014 (as modified, amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), by and among the ECP Pledgors (as defined therein), Empire, as borrower, Holdco and Holdings, as guarantors, Ankura Trust Company, LLC (as successor to Deutsche Bank AG New York Branch), in its capacity as administrative agent and collateral agent, and certain other lenders and parties thereto.

99. "*Prepetition Loan Documents*" means the Prepetition Credit Agreement, the Prepetition Security Agreement, the Prepetition Pledge Agreement, the Prepetition Intercreditor Agreement, and all other documents evidencing or relating to the foregoing.

100. "*Prepetition Pledge Agreement*" means that certain Pledge Agreement, dated as of February 23, 2017, between TTK Empire and Ankura Trust Company, LLC (as successor to Deutsche Bank AG New York Branch), in its capacity as collateral agent under the Prepetition Loan Documents.

101. "*Prepetition Security Agreement*" means that certain Pledge and Security Agreement, dated as of March 14, 2014 (as modified, amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), by and among Empire, Holdco, Holdings, and Ankura Trust Company, LLC (as successor to Deutsche Bank AG New York Branch), in its capacity as collateral agent under the Prepetition Loan Documents.

102. "*Priority Tax Claim*" means a claim described in section 507(a)(8) of the Bankruptcy Code, including a Secured Tax Claim.

103. "*Professional*" means a Person: (a) retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

104. "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

105. "*Proof of Claim*" means a proof of Claim filed against the Debtors in the Chapter 11 Cases.

106. "*Purchase Agreement*" means, as applicable, either (a) that certain Purchase and Sale Agreement among the Stalking Horse Bidder and the Debtors or (b) the purchase agreement of such other Purchaser under the Sale Order.

107. "*Purchaser*" means the Stalking Horse Bidder or such other successful bidder for the Interests in Holdings under the Sale Order.

108. "*Rejection Claim*" means any Claim against a Debtor for damages arising as a proximate result of the rejection of an executory contract or an unexpired lease to which Empire is a party under section 365 of the Bankruptcy Code pursuant to the Plan or separate motion.

109. "*Rejection Claims Bar Date*" means, unless otherwise extended by a Final Order with the agreement of the Consenting Lenders, the earlier of (a) the first Business Day that is thirty (30) calendar days after entry of the Confirmation Order and (b) the first Business Day that

is thirty (30) calendar days after the Bankruptcy Court enters an order approving the rejection of the executory contract or unexpired lease that gives rise to the Rejection Claim at issue.

110.    "*Rejection Schedule*" means the schedule of Executory Contracts and Unexpired Leases in the Plan Supplement, as may be amended from time to time, setting forth certain Executory Contracts and Unexpired Leases for rejection as of the Effective Date under section 365 of the Bankruptcy Code, which shall be in form and substance acceptable to the Purchaser in its sole and absolute discretion.

111.    "*Released Parties*" means each of the following: (a) the Debtors and their Estates, (b) the Reorganized Debtors, (c) Tyr Energy, LLC, (d) NAES, (e) the Consenting Lenders, (f) Ankura Trust Company, LLC, in its individual capacity, (g) the Purchaser, (h) the Eligible Equity Holders, (i) all of the respective successors, assigns and predecessors of each of the foregoing, (j) all Affiliates, subsidiaries, members, management companies. partners, and equity holders (regardless of whether such equity interests are held directly or indirectly) of each of the foregoing, and (k) with respect to each of the foregoing, all of their respective predecessors, participants, and current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, fund advisors, advisory board members and other professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; provided, however, that a holder of a direct or indirect equity interest in TTK Empire as of the Petition Date shall be a "Released Party" only to the extent such Person is an Eligible Equity Holder; provided, further, that to the extent any direct or indirect holder of equity in TTK Empire as of the Petition Date serves in any capacity with respect to the Debtors (e.g., manager, advisor, employee, director, officer or otherwise), or is otherwise an Affiliate of the Debtors, such direct or indirect holder of equity in TTK Empire shall be a "Released Party" only to the extent such Person is an Eligible Equity Holder; provided, further that a Lender shall be a "Released Party" only to the extent such Lender is a Consenting Lender and shall not be a "Released Party" in any other capacity hereunder.   For the avoidance of doubt, acts or actions that the Debtors (and their respective agents, officers, members, managers, directors, advisors, professionals and/or representatives) elect to take in accordance with, and solely as permitted pursuant to, Section 3(d) of the RSA shall not disqualify such parties from being "Released Parties" solely in their capacities as such.

112.    "*Releasing Parties*" means, collectively, each of the following in their respective capacity as such: (a) each of the other Released Parties (other than the Debtors and the Reorganized Debtors); (b) the Prepetition Agent; (c) each holder of an Allowed Claim; and  (d) with respect to any Person in the foregoing clauses (a) through (c), (i) such Person's predecessors, successors, and assigns, and (ii) all Persons entitled to assert Claims through or on behalf of such Persons with respect to the matters for which the releasing Persons are providing releases; provided, however, that no Lender, other than a Consenting Lender, shall be a Releasing Party under this Section 1.112 unless otherwise agreed in writing by such Lender.

113.    "*Reorganized*" means, as to any Debtor or the Debtors, the Debtor or Debtors and any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

114.    "*Reorganized Equity Interests*" means 100% of the limited liability company membership interests in each of Reorganized Empire, Reorganized Holdco and Reorganized Holdings, as applicable, after reinstatement on the Effective Date in accordance with Section 3.2(g) and which shall be subject to the New LLC Agreement of the applicable Reorganized Debtor.

115.    "*RSA*" means that certain Restructuring Support Agreement, dated May 19, 2019, by and among the Debtors, TTK Empire, Tyr Energy, LLC, the Consenting Lenders, and any additional parties that have joined the RSA in accordance with the terms thereof.[2]

116.    "*Sale Order*" means the *Order (A) Approving the Purchaser's Purchase Agreement, (B) Authorizing Sale of Membership Interests in Empire Gen Holdings, LLC Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption of Executory Contracts and Unexpired Leases, and (D) Granting Related Relief*, including the finding of good faith under Section 363(m) of the Bankruptcy Code including therein, to be entered in connection with the Confirmation Order.

117.    "*Secured Claim*" means a Claim to the extent it is (a) secured by a Lien on property of a Debtor's Estate, the amount of which is equal to or less than the value of such property (i) as set forth in this Plan, (ii) as agreed to by the holder of such Claim and the Debtors, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any rights of setoff of the holder of such Claim under section 553 of the Bankruptcy Code.

118.    "*Secured Tax Claim*" means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

119.    "*Securities Act*" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

120.    "*Securities Exchange Act*" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

121.    "*Stalking Horse Bidder*" means Empire Acquisition, LLC.

122.    "*Subsidiary Debtors*" means Empire, Holdco and Holdings.

123.    "*TTK Empire*" means TTK Empire Power, LLC.

124.    "*TTK Power*" means TTK Power, LLC.

125.    "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Interest to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Debtors or Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors'

---

[2]    HAK NTD: RSA needs to permit modification of Plan in the event of an asset sale to a third party, provided that Credit Agreement Obligations  are paid in full, in cash, with sale proceeds.

or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

126. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

127. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

128. "*Webster Bank*" means Webster Bank, National Association.

## 1.2    **Rules of Interpretation**

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to one gender include all genders; (j) all financial statement accounting terms not defined in the Plan shall have the meanings determined by GAAP as in effect on the date of the RSA; and (k) references to any Governmental Unit in any jurisdiction shall include any successor to such Governmental Unit.

## 1.3    **Computation of Time**

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

## 1.4    **Governing Law**

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into or to be entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of laws principles.

1.5     **Reference to Monetary Figures**

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

1.6     **Reference to the Debtors or the Reorganized Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## ARTICLE II

## ADMINISTRATIVE, PROFESSIONAL AND PRIORITY CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III.

2.1     **Administrative Claims**

Except as otherwise provided in the Plan, the Bar Date Order, or Final Order of the Bankruptcy Court, all requests for payment of Administrative Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than the Administrative Claims Bar Date.  The Bankruptcy Court shall determine the Allowed amounts of such Administrative Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code.  Each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of Title 28 of the United States Code), to the extent such claim has not already been paid in full during the Chapter 11 Cases, shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Administrative Claim, either: (a) payment in full in Cash on the later of (i) the Effective Date or (ii) the Allowance Date with respect to such Allowed Claim; (b) subject to the consent of the Debtors and the Purchaser, such other treatment to render such Administrative Claim unimpaired under section 1124 of the Bankruptcy Code; or (c) subject to the consent of the Debtors and the Purchaser, such other treatment as such holder may agree to as permitted by section 1129(a)(9) of the Bankruptcy Code.

2.2     **Professional Claims**

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than the Administrative Claims Bar Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code.  The Reorganized Debtors shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows.  From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall

16

terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

2.3     **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date, to the extent such claim has not already been paid in full during the Chapter 11 Cases, shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Priority Tax Claim either: (a) payment in full in Cash on the later of (i) the Effective Date or (ii) the Allowance Date with respect to such Allowed Claim; (b) subject to the consent of the Debtors and the Purchaser, such other treatment to render such Priority Tax Claim unimpaired under section 1124 of the Bankruptcy Code; or (c) subject to the consent of the Debtors and the Purchaser, such other treatment as such holder may agree to or as otherwise permitted by section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

3.1     **Classification of Claims and Interests**

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in <u>ARTICLE II</u>, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.  Unless a Class of Claims or Interests is specified to apply to a certain Debtor, such Class of Claims or Interests shall be deemed to apply separately with respect to each Plan proposed by each Debtor.

| Class | Claim or Interest | Debtor(s) | Status | Voting Rights |
|---|---|---|---|---|
| 1 | Other Priority Claims | Empire, Holdco and Holdings | Unimpaired | Conclusively Presumed to Accept; Not Entitled to Vote |
| 2 | L/C Claims | Empire | Unimpaired | Conclusively Presumed to Accept; Not Entitled to Vote |
| 3 | The Emera Secured Claims | Empire | Unimpaired | Conclusively Presumed to Accept; Not Entitled to Vote |

| Class | Claim or Interest | Debtor(s) | Status | Voting Rights |
|-------|-------------------|-----------|--------|---------------|
| 4 | The PILOT Claims | Empire | Unimpaired | Conclusively Presumed to Accept; Not Entitled to Vote |
| 5 | Other Secured Claims | Empire, Holdco and Holdings | Unimpaired | Conclusively Presumed to Accept; Not Entitled to Vote |
| 6 | General Unsecured Claims | Empire, Holdco and Holdings | Unimpaired | Conclusively Presumed to Accept; Not Entitled to Vote |
| 7A | Interests in Subsidiary Debtors | Empire, Holdco and Holdings | Unimpaired | Conclusively Presumed to Accept; Not Entitled to Vote |
| 7B | Interests in TTK Empire | TTK Empire | Impaired | Conclusively Presumed to Reject; Not Entitled to Vote |

**3.2**    **Treatment of Classes of Claims and Interests**

Except to the extent that a holder of an Allowed Claim or Interest, as applicable, agrees to a less favorable treatment, such holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Interest. Unless otherwise indicated, the holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Effective Date, or as soon as practicable thereafter.

(a)    **Class 1—Other Priority Claims**

(1)    *Classification*: Class 1 consists of all Other Priority Claims.

(2)    *Treatment*:  Each holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Other Priority Claim, payment in full in Cash on the latest of (i) the Effective Date, (ii) the Allowance Date with respect to such Allowed Claim or (iii) the date upon which such Allowed Claim becomes due and payable in accordance with the operative agreement between the applicable Debtor and the holder of such Other Priority Claim.

(3)    *Voting*: Class 1 is Unimpaired.   Holders of Class 1 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.   Therefore, holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

(b)    **Class 2—L/C Claims**

(1)    *Classification*: Class 2 consists of the L/C Claims.

(2)    *Treatment:* Each holder of an Allowed L/C Claim shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for,

such Claim, at the option of the Purchaser in its sole and absolute discretion either: (i) reinstatement of such Allowed L/C Claim and the Liens securing such Allowed L/C Claim; (ii) such other treatment to render such Allowed L/C Claim Unimpaired; or (iii) such other treatment as such holder may agree to or otherwise permitted by section 1129(a)(9) of the Bankruptcy Code.

(3)    *Voting*: Class 2 is Unimpaired.  The holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

(c)    **Class 3—The Emera Secured Claims**

(1)    *Classification*: Class 3 consists of the Emera Secured Claims.

(2)    *Treatment:* Emera shall receive reinstatement of the Emera Secured Claims and the Emera Liens in accordance with the Amended Emera Agreements.

(3)    *Voting*: Class 3 is Unimpaired.  Emera is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Therefore, Emera is not entitled to vote to accept or reject the Plan.

(d)    **Class 4—PILOT Claims**

(1)    *Classification*: Class 4 consists of the PILOT Claims.

(2)    *Treatment:* Holders of Allowed PILOT Claims shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for, the Allowed PILOT Claims, at the option of the Purchaser in its sole and absolute discretion, either: (i) assumption of the PILOT Agreements with the PILOT Claims and the PILOT Mortgage reinstated or otherwise rendered Unimpaired; (ii)  the  rejection of the PILOT Agreements, and payment in full in Cash of rejection damages, if any, together with any other due and unpaid portion of the PILOT Claims on the Effective Date (or as soon thereafter as reasonably practicable); or (iii)  such other treatment to render the Allowed PILOT Claims Unimpaired.

(3)    *Voting*: Class 4 is Unimpaired.  Holders of Allowed Class 4 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, holders of Allowed Class 4 Claims are not entitled to vote to accept or reject the Plan.

(e)    **Class 5—Other Secured Claims**

(1)    *Classification*: Class 5 consists of all Other Secured Claims.

(2)    *Treatment:* Each holder of an Allowed Other Secured Claim, shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Other Secured Claim, at the option of the Purchaser in its sole and absolute discretion, either: (i) payment in full in Cash on the later of (x) the Effective Date, (y) the Allowance Date with respect to such Allowed Claim or (z) the date upon which such Allowed Claim becomes due and payable in accordance with the operative agreement between the applicable Debtor and the holder of such Allowed Other Secured Claim; (ii) the return or abandonment of the collateral securing such claim to such holder; (iii) such other treatment to render such Allowed Other Secured Claim Unimpaired; or (iv) such other treatment as such holder may agree to or otherwise permitted by section 1129(a)(9) of the Bankruptcy Code.

(3)    *Voting*: Class 5 is Unimpaired.  Holders of Allowed Class 5 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, holders of Allowed Class 5 Claims are not entitled to vote to accept or reject the Plan.

(f)    **Class 6—General Unsecured Claims**

(1)    *Classification*: Class 6 consists of all General Unsecured Claims.

(2)    *Treatment:* Each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed General Unsecured Claim, payment in full in Cash on the latest of (i) the Effective Date, (ii) the Allowance Date with respect to such Allowed Claim or (iii) the date upon which such Allowed Claim becomes due and payable in accordance with the operative agreement between the applicable Debtor and the holder of such General Unsecured Claim.

(3)    *Voting*: Class 6 is Unimpaired.  Holders of Allowed Class 6 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, holders of Allowed Class 6 Claims are not entitled to vote to accept or reject the Plan.

(g)    **Class 7A—Interests in Subsidiary Debtors**

(1)    *Classification*: Class 7 consists of all Interests in the Subsidiary Debtors.

(2)    *Treatment:* On the Effective Date, Allowed Interests in the Debtors shall be reinstated as Reorganized Equity Interests in accordance with section 1124(1) of the Bankruptcy Code. For the avoidance of doubt, at all Allowed Interests in Holdings acquired by the Purchaser shall be reinstated as Reorganized Equity Interests in Holdings owned by the Purchaser in accordance with the Sale Order and the Purchase Agreement and shall not be impaired under the Plan.

(3)  *Voting*: Class 7 is Unimpaired.  Holders of Allowed Interests in the Debtors are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, holders of Allowed Class 7 Interests are not entitled to vote to accept or reject the Plan.

(h)  **Class 7B—Interests in TTK Empire**

(1)  *Classification*: Class 7B consists of all Interests in TTK Empire.

(2)  *Treatment:* Holders of Interests in TTK Empire shall receive no property or distribution under the Plan on account for such Interests.  Interests in TTK Empire shall be indefeasibly cancelled following the corporate dissolution and cancellation of TTK Empire on or about the Effective Date.

(3)  *Voting*: Class 7B is Impaired.  Holders of Interests in TTK Empire are conclusively presumed to have rejected the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 7B Interests are not entitled to vote to accept or reject the Plan.

## 3.3  **Subordination**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, reserve the right to re-classify, with the consent of the Consenting Lenders, any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## 3.4  **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors', the Purchaser's or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## 3.5  **Elimination of Vacant Classes**

Any Class of Claims that does not have a holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of determining acceptance and rejection of the plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

4.1    **General Settlement of Claims**

Unless otherwise set forth in the Plan or the Sale Order, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests.

4.2    **Section 1145 Exemption**

The reinstatement of Interests in the Subsidiary Debtors (including without limitation the reinstatement of Interests in Holdings as Reorganized Equity Interests in Holdings owned by the Purchaser) pursuant to Section 3.2(g) of the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Person, from the registration and/or prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any state or local law requiring registration and/or delivery of prospectuses prior to the offer, issuance, sale or distribution of securities. The Interests reinstated hereunder pursuant to Section 3.2(g) of the Plan will (i) not be "restricted securities" (as defined in Rule 144(a)(3) under the Securities Act), and (ii) be freely tradable by any recipient thereof that (x) at the time of transfer is not an "affiliate" (as defined in Rule 144(a)(l) under the Securities Act) of the Reorganized Debtors and has not been such an "affiliate" within ninety (90) days of such transfer, (y) is not an entity that is an "underwriter" (as defined in subsection (b) of section 1145 of the Bankruptcy Code) and (z) has not acquired such Reorganized Equity Interests from an "affiliate" of the Reorganized Debtors within one (1) year of such transfer, subject to (A) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities and (B) applicable regulatory approval.

4.3    **Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided herein or in the Sale Order, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate and all Causes of Action (except Avoidance Actions, which shall be deemed released on the Effective Date), shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business or wind down its affairs, as applicable, and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, the Reorganized Equity Interests in Holdings shall vest in the Purchaser in accordance with the terms of the Sale Order.

4.4    **New Organizational/Governance Documents**

The Debtors' respective formation documents, including certificates of incorporation, bylaws, and other formation documents relating to limited liability companies, shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code.  On the Effective Date, Reorganized Empire, Reorganized Holdco, Reorganized Holdings and the Purchaser shall enter into the New LLC Agreements and any other applicable New Organizational/Governance Documents, which shall in each case become effective and binding in accordance with their respective terms and conditions, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by the New Organizational/Governance Documents).

4.5   **Management Incentive Plan**

On and after the Effective Date, Reorganized Empire, Reorganized Holdco and Reorganized Holdings may adopt and implement the Management Incentive Plan, which terms and conditions, including recipients, individual awards and vesting period, shall be determined by the New Board in accordance with the New LLC Agreements and shall be acceptable to the Purchaser in its sole and absolute discretion.

4.6   **Amended O&M Agreement**

On or before the Effective Date, Empire, Reorganized Empire, and NAES, as applicable, shall enter into the Amended O&M Agreement.

4.7   **Amended Emera Agreements**

On or before the Effective Date, Empire, Reorganized Empire, Emera, and Emera Energy Services Subsidiary No. 1 LLC, as applicable, shall enter into the Amended Emera Agreements.

4.8   **Other Material Agreements**

On or before the Effective Date, Empire and the applicable counterparties to the Other Material Agreements, shall enter into, or Empire shall have assumed, as applicable, each of the Other Material Agreements.

4.9   **Dissolution of TTK Empire**

Effective as of the Effective Date, TTK Empire shall be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of TTK Empire.

4.10   **Cancellation of Instruments, Certificates, and Other Documents**

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to Executory Contracts and Unexpired Leases that shall be assumed by Reorganized Empire, on the Effective Date, all agreements, instruments, and other documents evidencing or governing any Claims or Interests and any rights of any holder in respect thereof (including all registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights and other investor rights governing or relating to any

Claims or Interests), except for the avoidance of doubt, any agreements, instruments, or documents transferred under the Purchase Agreement, shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully discharged.  Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, loss, waiver, or other forfeiture of, or by, the Debtors or their interests, or any increase or acceleration of any of their obligations, in any such case as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Section 4.10 shall be deemed null and void and shall be of no force and effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of Empire or any of its counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by Empire pursuant to a Final Order of the Bankruptcy Court or hereunder.   Subject to applicable law, and except with respect to any Claims or Causes of Action released under the Plan, any rights and/or remedies of non-Debtor parties solely against other non-Debtor parties pursuant to agreements, instruments, and other documents canceled pursuant to this paragraph are preserved.  Notwithstanding anything to the contrary in this Plan, the Prepetition Loan Documents shall continue in effect solely to the extent necessary to permit the Prepetition Agent to (1) seek and receive payment of any postpetition amounts due pursuant to Section 4.18, (2) maintain its charging liens and priority of payment with respect to its (and its advisors') postpetition fees and expenses, and (3) receive the benefit of the Prepetition Credit Agreement Contingent Rights.   For the avoidance of doubt, the Reorganized Subsidiary Debtors shall succeed to the Subsidiary Debtors' respective obligations and burdens with respect to the Prepetition Credit Agreement Contingent Rights, and nothing in this Plan (including without limitation the treatment of Claims and the discharges, exculpations and releases set forth in Article VIII of this Plan) shall be deemed to discharge, exculpate or release any person, including the Subsidiary Reorganized Debtors and the lenders under the Prepetition Credit Agreement, from their respective obligations and burdens with respect to the Prepetition Credit Agreement Contingent Rights.

**4.11    Execution of Plan Documents**

Except as otherwise provided herein, on the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors shall execute all instruments and other documents required to be executed under the Plan, in form and substance acceptable to, (a) if the Stalking Horse Bidder is the Purchaser, the Consenting Lenders in their sole and absolute discretion and (b) if a Person other than the Stalking Horse Bidder is the Purchaser, such Purchaser in its sole and absolute discretion.

**4.12    Limited Liability Company Action**

Each of the matters provided for by the Plan involving the organizational structure of the Debtors or limited liability company or related actions to be taken by or required of the Reorganized Debtors, whether taken prior to or as of the Effective Date, including without limitation the reinstatement of Interests, shall be authorized without the need for any further limited liability company action or without any further action by the Debtors or the Reorganized Debtors, as applicable.

4.13    **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtors and, in the case of Reorganized Empire, the New Board, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents, including without limitation, in the case of Reorganized Empire, Reorganized Holdco and Reorganized Holdings, the New LLC Agreements and New Organizational/Governance Documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

4.14    **Section 1146(a) Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

4.15    **Managers, Directors and Officers**

Pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as may otherwise be disclosed in the Disclosure Statement, on the Effective Date, the members of the New Board, who are identified in the Plan Supplement and which shall be determined or selected (as applicable) by the Purchaser in its sole and absolute discretion, shall serve as the initial board of managers of Reorganized Empire, Reorganized Holdco and Reorganized Holdings, as applicable.  After the Effective Date, the governance and management of Reorganized Empire, Reorganized Holdco and Reorganized Holdings, as applicable, shall be determined by the applicable board of managers or board of directors in accordance with the New Organizational/Governance Documents and the laws of the applicable state of organization.

Except as otherwise provided in the Plan Supplement, the officers of the respective Reorganized Debtors immediately before the Effective Date shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date in accordance with applicable non-bankruptcy law.

Except to the extent that a member of the board of managers or other governing body, as applicable, of a Debtor continues to serve as a manager or member or such other governing body of such Debtor on and after the Effective Date, the members of the board of managers or other governing body of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such manager or member of such other governing body will be deemed to have resigned or shall otherwise cease to be a manager or member of such other governing body of the applicable Debtor on the Effective Date, all without the payment or provision of any fees, costs, expenses,

bonuses, compensation, severance or other amounts or benefits on account of such resignation. Commencing on the Effective Date, each of the managers and members of any other governing body of Reorganized Empire, Reorganized Holdco and Reorganized Holdings, as applicable, shall be elected and serve pursuant to the terms of the New LLC Agreements or New Organizational/Governance Documents and may be replaced or removed in accordance with the New LLC Agreements or New Organizational/Governance Documents.

4.16    **Preservation of Rights of Action**

Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan (including the releases set forth in Section 8.2 of the Plan) or by the Sale Order or another Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement or the Disclosure Statement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.**  Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication, and therefore no preclusion doctrine (including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Person shall vest in the Reorganized Debtors.  The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

4.17    **Release of Avoidance Actions**

On the Effective Date, and except to the extent otherwise reserved in the Plan Supplement or the Sale Order, the Debtors shall be deemed to have released any and all Avoidance Actions and the Debtors and the Reorganized Debtors, and any of their successors or assigns and any Person acting on behalf of the Debtors or the Reorganized Debtors, shall be

deemed to have waived the right to pursue any and all Avoidance Actions. No Avoidance Actions shall revert to creditors of the Debtors.

4.18   **Payment of Fees and Expenses of the Prepetition Agent**

The Debtors shall pay in Cash all reasonable and documented unpaid fees and expenses of the Prepetition Agent and its advisors (including Davis Polk & Wardwell LLP), without application to or approval of the Bankruptcy Court, the U.S. Trustee or any party in interest, including for any such fees and expenses incurred prior to, on or after the Confirmation Date, the Closing, the Effective Date or Consummation.

**ARTICLE V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5.1   **Assumption of Executory Contracts and Unexpired Leases**

Except as otherwise provided herein, each Executory Contract and Unexpired Lease to which Empire is a party, including without limitation the Executory Contracts and Unexpired Leases identified on the Assumption Schedule, shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless any such Executory Contract or Unexpired Lease: (a) is listed on the Rejection Schedule; (b) has been previously assumed or rejected by Empire in a Final Order (including without limitation the Sale Order) or has been assumed or rejected by Empire by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; or (c) is the subject of a motion to assume or reject pending as of the Effective Date. The filing of the Plan will constitute a motion of the Debtors seeking, and the Confirmation Order will constitute an order of the Bankruptcy Court approving, the above-described assumptions, assignments, and rejections as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. For the avoidance of doubt, the Effective Date shall occur on the same day as the Closing.

Except as otherwise provided herein or agreed to by the applicable Reorganized Subsidiary Debtors with the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Subsidiary Debtors, and be enforceable by the

Reorganized Subsidiary Debtors in accordance with their terms notwithstanding any provision in such Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in an assumed Executory Contract or Unexpired Lease that purports to declare a breach or default based in whole or in part on commencement or continuance of these Chapter 11 Cases is hereby deemed unenforceable. Any provision of any agreement or other document that permits a person to terminate or modify an agreement or to otherwise modify the rights of the Debtors based on the filing of the Chapter 11 Cases or the financial condition of the Debtors shall be unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Subsidiary Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan will revest in and be fully enforceable by the Reorganized Subsidiary Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

**5.2**     **Cure of Defaults and Objections to Cure and Assumption**

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash when due or in the ordinary course of business, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree with the consent of (a) if the Stalking Horse Bidder is the Purchaser, the Consenting Lenders and (b) if a Person other than the Stalking Horse Bidder is the Purchaser, such Purchaser. In the event of a dispute regarding (1) the amount of any payments to Cure a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the Cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. If an objection to Cure is sustained by the Bankruptcy Court, the Debtors or Reorganized Debtors, as applicable, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it with the consent of (a) if the Stalking Horse Bidder is the Purchaser, the Consenting Lenders and (b) if a Person other than the Stalking Horse Bidder is the Purchaser, such Purchaser (not to be unreasonably withheld).

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of the applicable cure amount, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that is assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.**

5.3     **Pre-existing Payment and Other Obligations**

Rejection of any Executory Contract or Unexpired Lease shall not constitute a termination of pre-existing obligations owed to the Debtors or Reorganized Debtors, as applicable, under such contract or lease.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide: (a) payment to the contracting Debtors or Reorganized Debtors, as applicable, of outstanding and future amounts owing thereto under or in connection with rejected Executory Contracts or Unexpired Leases, or (b) warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected Executory Contracts.

5.4     **Rejection Claims and Objections to Rejection Claims**

Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases.  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the claims agent no later than the Rejection Claims Bar Date.  Any such Proofs of Claim that are not timely filed shall be disallowed without the need for any further notice to or action, order, or approval of the Bankruptcy Court.  Such Proofs of Claim shall be forever barred, estopped, and enjoined from assertion.  Moreover, such Proofs of Claim shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged notwithstanding anything in a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class 6—General Unsecured Claims against the applicable Debtor counterparty thereto.

5.5     **Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

5.6     **Reservation of Rights Regarding Contracts and Leases**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

5.7     **Termination of the Asset Management Agreement as of the Effective Date**

Effective as of the Effective Date, the Asset Management Agreement and all obligations of the parties thereunder shall be deemed terminated, cancelled, and no longer in effect. Notwithstanding the foregoing, Tyr Energy, LLC shall have (a) an Allowed General Unsecured Claim against Empire for all unpaid amounts owed under the Asset Management Agreement that have been documented and actually accrued through the Petition Date and (b) an Allowed Administrative Claim against Empire for all unpaid amounts owed under the Asset Management Agreement that have been documented and actually accrued from the Petition Date through the Effective Date, which Allowed Claims shall be paid in full, in Cash, on the Effective Date or as soon as practicable thereafter; provided, however, that such Allowed Claims shall not include any damages for rejection or termination of the Asset Management Agreement and any such claim shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective properties or interests in property as agents, successors or assigns.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1     **Distributions on Account of Claims and Interests Allowed as of the Effective Date**

Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors (as the case may be) and the holder of the applicable Claim or Interest, on the Distribution Date, the Reorganized Debtors shall make initial distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date, subject to the Reorganized Debtors' right to object to Claims and Interests; provided, however, that: (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice; and (b) Allowed Priority Tax Claims shall be paid in accordance with Section 2.3; provided that the Purchaser shall cause Reorganized Empire, Reorganized Holdco and Reorganized Holdings to make any distributions on Allowed Claims asserted against such Reorganized Debtors.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim may be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

6.2     **Special Rules for Distributions to Holders of Disputed Claims and Interests**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; and (b) any Person that holds both an Allowed Claim or Allowed Interest and a Disputed Claim or Disputed Interest shall not receive any distribution on the Allowed Claim or Allowed Interest unless and until all objections to the Disputed Claim or Disputed Interest have been resolved by settlement or Final Order or

the Claims or Interests have been Allowed or expunged.  Any dividends or other distributions arising from property distributed to holders of Allowed Claims or Interests, as applicable, in a Class and paid to such holders under the Plan shall be paid also, in the applicable amounts, to any holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other distributions were earlier paid to holders of Allowed Claims or Interests in such Class.

6.3   **Delivery of Distributions**

(a)   Record Date for Distributions

On the Effective Date, the Debtors' records of ownership of Claims against the Debtors (including without limitation the claims register in the Chapter 11 Cases) shall be closed and the Reorganized Debtors shall be authorized and entitled to recognize only those record holders, if any, as of the close of business on the Effective Date.  Notwithstanding the foregoing, if a Claim or Interest is transferred less than twenty (20) days before the Effective Date, the Reorganized Debtors or their duly appointed disbursing agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)   Distribution Process

The Reorganized Debtors or their duly appointed disbursing agent shall make all distributions required under the Plan.  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to holders of Allowed Claims and Interests, including Claims and Interests that become Allowed after the Effective Date, shall be made to holders of record as of the Effective Date by the Reorganized Debtors: (1) to the address of such holder as set forth in the books and records of the applicable Debtor (or if the Debtors have been notified in writing, on or before the date that is fourteen (14) days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Reorganized Debtors or their duly appointed disbursing agent has not received a written notice of a change of address on or before the date that is fourteen (14) days before the Effective Date; or (3) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf.  The Debtors, the Reorganized Debtors or their duly appointed disbursing agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

(c)   Compliance Matters

In connection with the Plan, to the extent applicable, the Reorganized Debtors or their duly appointed disbursing agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan and all related agreements shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors or their duly appointed disbursing agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the

distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, paying the withholding tax using their own funds and retain such withheld property, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution to a holder of an Allowed Claim or any other Person pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder or Person has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

Any Person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Reorganized Debtors or such other Person designated by the Reorganized Debtors an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8. If such request is made by the Reorganized Debtors or such other Person designated by the Reorganized Debtors and the holder fails to comply before the date that is one hundred eighty (180) days after the request is made, the amount of such distribution shall irrevocably revert to the applicable Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or its respective property.

(d)    Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

(e)    Undeliverable and Unclaimed Distributions

(1)    *Undeliverable Distributions.* If any distribution to a holder of an Allowed Claim is returned to the Reorganized Debtors or their duly appointed disbursing agent as undeliverable, no further distributions shall be made to such holder unless and until the Reorganized Debtors or their duly appointed disbursing agent are notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest. Subject to the succeeding sentence, the Reorganized Debtors or their duly appointed disbursing agent shall retain undeliverable distributions until such time as a distribution becomes deliverable. Each holder of an Allowed Claim

32

whose distribution remains (i) undeliverable for one hundred eighty (180) days after the distribution is returned as undeliverable or (ii) otherwise has not been deposited, endorsed or negotiated within one hundred eighty (180) days of the date of issuance shall have no claim to or interest in such distribution and shall be forever barred from receiving any distribution under the Plan.

(2)    *Reversion.*    Any distribution under the Plan that is an Unclaimed Distribution for a period of one hundred eighty (180) days after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the applicable Reorganized Debtor.    Upon such revesting, the Claim or Interest of any holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

## 6.4    **Claims Paid or Payable by Third Parties**

(a)    Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall repay, return or deliver any distribution held by or transferred to the holder to the applicable Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such distribution under the Plan.

(b)    Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    Applicability of Insurance Policies

Except as otherwise specifically provided herein, distributions to holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy.  Nothing

contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Person may hold against any other Person, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

6.5   **Setoffs**

Except as otherwise specifically provided herein, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder.  In no event shall any holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has preserved, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

6.6   **Allocation Between Principal and Accrued Interest**

Except as otherwise specifically provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Effective Date.

6.7   **Manner of Payment under Plan**

Except as otherwise specifically provided in the Plan, at the option of the Debtors or, following the entry of the Sale Order and the Closing, Reorganized Empire or the other Reorganized Debtors, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

6.8   **Minimum Cash Distributions**

The Reorganized Debtors or their duly appointed disbursing agent shall not be required to make any distribution of Cash less than one hundred dollars ($100) to any holder of an Allowed Claim; provided, however, that if any distribution is not made pursuant to this Section 6.8, such distribution shall be added to any subsequent distribution to be made on behalf of such Allowed Claim.

6.9     **No Distribution in Excess of Amount of Allowed Claim**

Notwithstanding anything in the Plan to the contrary, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

7.1     **Disputed Claims Process**

Except as otherwise provided herein, if a party files a Proof of Claim and the Debtors (with the consent of the Consenting Lenders) or Reorganized Debtors, as applicable, do not determine in their sole discretion, and without the need for notice to or action, order or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, except as otherwise provided in Section 3.2, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this ARTICLE VII. The Debtors (with the consent of the Consenting Lenders) or Reorganized Debtors shall be entitled to object to any Claim (other than Claims expressly Allowed by the Plan) and to have the validity or amount of any Claim adjudicated by the Bankruptcy Court.

7.2     **Prosecution of Objections to Claims and Interests**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority to: (a) file, withdraw, or litigate to judgment any objections to Claims or Interests; and (b) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court. Any objections to a Claim shall be served and filed on or before the Claims Objection Deadline. All Claims or Interests not objected to by the Claims Objection Deadline shall be deemed Allowed. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Section 4.16 (Preservation of Rights of Action).

7.3     **No Interest**

Unless otherwise specifically provided for in the Plan or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII

## EFFECT OF CONFIRMATION OF THE PLAN

8.1     <u>Discharge of Claims and Termination of Interests</u>

**Except as otherwise provided for herein, including, for the avoidance of doubt, in Article III hereof, and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Reorganized Subsidiary Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Interests; (c) all Claims against and Interests in the Subsidiary Debtors shall be satisfied, discharged, and released in full, and the Subsidiary Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Persons shall be precluded from asserting against the Subsidiary Debtors, the Subsidiary Debtors' Estates, the Reorganized Subsidiary Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against TTK Empire; <u>provided</u>, <u>however</u> that (i) no holder of a Claim against or Interest in TTK Empire may on account of such Claim or Interest seek payment or other treatment from, or seek recourse against the Subsidiary Debtors in a manner inconsistent with the Plan, and (ii) nothing in this sentence shall alter or amend, or be deemed to alter or amend the settlements embodied in the Plan, or the releases, injunctions and exculpations provided for in <u>Sections 8.2</u>, <u>8.3</u>, <u>8.4</u>, and <u>8.5</u>.**

8.2     <u>Releases by the Debtors</u>

**Pursuant to section 1123(b) of the Bankruptcy Code, except as otherwise specifically provided for herein, or for any right or obligation arising under the Plan Documents or any other agreements duly entered by the Debtors after the Petition Date that remains in effect after the Effective Date, as of the Effective Date, for good and valuable consideration, each of the Debtors, the Reorganized Debtors, and the Estates shall be deemed to have irrevocably and absolutely released the Released Parties from any and all Claims and Causes of Action that the Debtors, the Reorganized Debtors, or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence or circumstances existing or taking place on or before the Effective Date arising out of or in any way related to the Debtors, the Reorganized Debtors, the Estates, NAES, the O&M Agreement (solely to the extent the Amended O&M Agreement has been entered into and is in effect), the Emera Agreements (solely to the extent the Amended Emera Agreements have been entered into and are in effect), the Asset Management Agreement, the Prepetition Loan Documents, the Chapter 11 Cases, the RSA, the Purchase Agreement, the Disclosure Statement, the Plan, the Plan Documents, the Cash Collateral Orders or the**

Cash Collateral Motion, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, or the negotiation, formulation, or preparation of the foregoing documents or related agreements, instruments, or other documents; **provided**, **however**, that the foregoing provisions of this **Section 8.2** shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; **provided**, **further**, that the release of Claims contained in this Section 8.2 shall be in addition to and shall have no impact on the validity of the release granted by Empire pursuant to Section 9.15 of the Purchase Agreement.

8.3   **Third Party Releases**

Except as otherwise specifically provided for herein or for any right or obligation arising under the Plan Documents or any other agreements duly entered by the Debtors after the Petition Date that remains in effect after the Effective Date, as of the Effective Date, for good and valuable consideration and in accordance with section 1141 of the Bankruptcy Code, each of the Released Parties shall be deemed irrevocably and absolutely released by each of the Releasing Parties in each case from any and all claims, interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of setoff, third party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Persons under the Bankruptcy Code) whatsoever, whether for tort, fraud, contract, violations of federal or state securities laws, Avoidance Actions or otherwise, including any derivative Claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, existing or hereinafter arising, in law, equity, or otherwise, that such Person would have been legally entitled to assert in its own right (whether individually or collectively), or on behalf of the holder of any claim or equity interest (whether individually or collectively) or other entity, in any case of the foregoing, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence or circumstances existing or taking place at any time on or before the Effective Date arising out of or in any way related to the Debtors, the Reorganized Debtors, the Estates, NAES, the O&M Agreement (solely to the extent the Amended O&M Agreement has been entered into and is in effect), the Emera Agreements (solely to the extent the Amended Emera Agreements have been entered into and are in effect), the Asset Management Agreement, the Prepetition Loan Documents, the Cash Collateral Orders and the Cash Collateral Motion, the Chapter 11 Cases, the RSA (including any exhibits thereto), the Purchase Agreement, the Disclosure Statement, the Plan, or the Plan Documents; **provided**, **however**, that the foregoing provisions of this **Section 8.3** shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction.  For the avoidance of doubt, nothing in this **Article VIII** is intended to modify the obligations of the Consenting Lenders under the RSA.

8.4    **Exculpation**

No Exculpated Party shall have or incur any liability, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, cause of action or liability for any Exculpated Claim; <u>provided</u>, <u>however</u>, that the foregoing "exculpation" shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order entered by a court of competent jurisdiction to have constituted gross negligence, willful misconduct, fraud, or criminal conduct; <u>provided</u>, <u>further</u>, that in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

8.5    **Injunction**

Except as otherwise provided herein or for obligations issued pursuant hereto, all Persons that have held, hold or may hold Claims or Interests that have been released pursuant to <u>Section 8.2</u> or <u>Section 8.3</u>, discharged pursuant to <u>Section 8.1</u>, or are subject to exculpation pursuant to <u>Section 8.4</u> are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Persons or the property or Estates of such Persons on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons or against the property or Estates of such Persons on account of or in connection with or with respect to any such Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

8.6    **Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Person with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have

38

been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

8.7   **Indemnification**

On and from the Effective Date, and except as prohibited by applicable law, the Reorganized Debtors shall assume or reinstate, as applicable, all indemnification obligations in place as of the Effective Date that are set forth in the organizational or governance documents in effect after March 3, 2017 for Debtors Empire, Holdco, and Holdings, as such obligations exist as of immediately prior to the Effective Date, but solely with respect to the individuals or entities that became entitled to such indemnification after March 3, 2017.

8.8   **Recoupment**

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has preserved, or intends to preserve any right of recoupment.

8.9   **Release of Liens**

Except (a) with respect to the Liens securing: (i) the Emera Secured Claims, (ii) L/C Claims, (iii) the PILOT Claims or (iv) the Other Secured Claims (in the event that the treatment of such Claims requires the reinstatement or continuation of such Liens), or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.

## ARTICLE IX

## CONDITIONS PRECEDENT

9.1   **Conditions Precedent to Confirmation.**  It shall be a condition to Confirmation that the following conditions shall have been satisfied or waived pursuant to <u>Section 9.3:</u>

(a)      the Bankruptcy Court shall have entered the Sale Order which, if the Stalking Horse Bidder is the Purchaser, shall be in substantially the form annexed to the RSA, with such changes as may be required by the Bankruptcy Court that are consistent with the RSA and in form and substance acceptable to the Consenting Lenders in their sole and absolute discretion and the Debtors;

(b)     the Bankruptcy Court shall have entered an order authorizing and approving the assumption of the RSA by the Debtors and the performance by the Debtors of their obligations under the RSA in form and substance reasonably acceptable to the Consenting Lenders;

(c)     the Bankruptcy Court shall have entered the Final Cash Collateral Order in form and substance acceptable to the Consenting Lenders and such order shall have become a Final Order; and

(d)     the Plan, Plan Supplement and the form of Confirmation Order filed by the Debtors shall be in form and substance acceptable to the Purchaser and the Consenting Lenders.

9.2     **Conditions Precedent to the Effective Date.**   It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 9.3:

(a)     all conditions precedent to Confirmation set forth in Section 9.1 hereof shall have been satisfied or waived pursuant to Section 9.3 hereof;

(b)     the Bankruptcy Court shall have entered the Confirmation Order, which shall be consistent with the RSA and otherwise reasonably satisfactory to the Debtors and to the Consenting Lenders, and such order shall have become a Final Order;

(c)     the Bankruptcy Court shall have entered the Sale Order, such order shall have become a Final Order, and the Closing shall have occurred;

(d)     all conditions precedent to Closing set forth in the Sale Order shall have been satisfied or waived in accordance with the terms of the Sale Order and the Purchase Agreement;

(e)     all reasonable and documented fees and expenses of the Prepetition Agent and its professional advisors invoiced prior to the Effective Date shall have been paid in full in Cash;

(f)     the Plan Documents having been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(g)     the RSA shall not have been terminated and remains in full force and effect;

(h)     the Amended O&M Agreement (or such other agreement entered into between NAES and the Debtors with the prior consent of the Purchaser) shall be in full force and effect;

(i)     the Amended Emera Agreements (or such other agreements entered into between Emera and Empire with the prior consent of the Purchaser) shall be in full force and effect;

(j)  the Other Material Agreements (or such other agreements entered into between the parties to the Other Material Agreements and Empire with the prior consent of the Purchaser) shall be in full force and effect; and

(k)  all governmental, regulatory, environmental and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents including, but not limited to, Bankruptcy Court approval, with respect to the transactions contemplated by the Plan, if any, having been obtained, not be subject to unfulfilled conditions and remaining in full force and effect, there existing no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan and all applicable waiting periods having expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

9.3  **Waiver of Conditions Precedent**

The Debtors, with the prior written consent of the Consenting Lenders (or, if a Person other than the Stalking Horse Bidder is the Purchaser, such Purchaser), may waive any of the conditions to Confirmation of the Plan or the Effective Date set forth in Section 9.1 or Section 9.2 (as applicable) at any time without any notice to any other parties-in-interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan, provided that the conditions set forth in Section 9.2(e) shall not be waived without the agreement of the Debtors and the Prepetition Agent in its sole discretion.

9.4  **Effect of Non-Occurrence of Conditions to Consummation**

If, prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then, except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of any Debtor or any other Person; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Person.

## ARTICLE X

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

10.1  **Modification of Plan**

Effective as of the date hereof: (a) the Debtors, with the prior written consent of the Consenting Lenders (and, if a Person other than the Stalking Horse Bidder is the Purchaser, such Purchaser), reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order, subject to the limitations set forth herein and the RSA; and (b) after the entry of the Confirmation Order, the Debtors with the prior written consent of the Consenting Lenders (and, if a Person other than the

Stalking Horse Bidder is the Purchaser, such Purchaser) may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency, in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, subject to the limitations set forth herein and the RSA.

10.2    **Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Person, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Person.

10.3    **Confirmation of the Plan**

The Debtors reserve the right to amend the Plan to the extent, if any, that Confirmation pursuant to section 1129 of the Bankruptcy Code requires modification.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, except as otherwise provided herein, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims or other Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the

Reorganized Debtors' amendment, modification, or supplement, after the Effective Date, pursuant to ARTICLE V, of the list of Executory Contracts and Unexpired Leases to be rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of: (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases; and (b) the Plan or the Confirmation Order, including contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce the Sale Order and any other order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with Consummation or enforcement of the Plan;

10.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Section 6.4(a); (b) with respect to the releases, injunctions, and other provisions contained in ARTICLE VIII, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan or the Confirmation Order, or any Person's obligations incurred in connection with the Plan or the Confirmation Order, including those arising under agreements, documents, or instruments executed in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.     enter an order or Final Decree concluding or closing the Chapter 11 Cases;

15.     enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases; and

16.     hear any other matter not inconsistent with the Bankruptcy Code.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.   The   Plan   shall   not   modify   the   jurisdictional   provisions   of   the   New Organizational/Governance Documents or any documents set forth in the Plan Supplement. Notwithstanding anything to the contrary in this Article XI, nothing in the Plan shall be construed to mean that the Bankruptcy Court has jurisdiction over any dispute solely among the prepetition creditors (including the Prepetition Agent), including in their capacity as holders or potential holders of interests in the Stalking Horse Bidder or the Purchaser.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.1   **Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as the Debtors, in consultation with the Purchaser, may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 12.2   **Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted or dismissed, or a Final Decree is issued, whichever occurs first.

### 12.3   **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.   None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed

to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

## 12.4    **Successors and Assigns**

The rights, benefits, and obligations of any Persons named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Person.

## 12.5    **Service of Documents**

Any pleading, notice, or other document given regarding the matters contemplated by this Plan shall, unless otherwise expressly provided herein, be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or electronic transmission, when sent and shall be served on:

| | |
|---|---|
| **If to the Debtors:** | **Empire Generating Co, LLC** |
| | c/o Tyr Energy, LLC |
| | 7500 College Blvd., Suite 400 |
| | Overland Park, Kansas 66210 |
| | Attn:   Legal Department |
| | Email: tso@tyrenergy.com |
| | |
| | With a copy to: Counsel to the Debtors |
| | |
| **Counsel to the Debtors** | **Hunton Andrews Kurth LLP** |
| | 200 Park Avenue |
| | New York, New York 10166 |
| | Attn:   Peter S. Partee, Sr., Esq. |
| | Robert A. Rich, Esq. |
| | Michael S. Legge, Esq. |
| | Email: ppartee@huntonak.com |
| | rrich2@huntonak.com |
| | mlegge@hunton.com |
| | |
| | - and - |
| | |
| | **Steinhilber Swanson LLP** |
| | 122 W. Washington, Suite 850 |
| | Madison, Wisconsin 53703 |
| | Attn: Michael P. Richman, Esq. |
| | Email: mrichman@steinhilberswanson.com |

**If to the Consenting Lenders:** To the addresses or facsimile numbers set forth below such Consenting Lender's signature page to the RSA (or as directed by any transferee thereof), as the case may be.

With a copy, which shall not constitute notice, to:

**Skadden, Arps, Slate, Meagher & Flom LLP**
155 N. Wacker Drive
Chicago, Illinois 60606
Attn:   Kimberly A. deBeers, Esq.
Email: kimberly.debeers@skadden.com

-and-

One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Attn:   Carl T. Tullson, Esq.
Email: carl.tullson@skadden.com

**If to the Prepetition Agent:** **Ankura Trust Company, LLC**
485 Lexington Avenue, 10th Floor
New York, New York 10017
Attn:   Lynn Poss Veblen, Esq.
          Michael Fey
Email: lynn.poss@ankura.com
          michael.fey@ankura.com

With a copy to: Counsel to the Prepetition Agent

**Counsel to the Prepetition Agent** **Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, New York 10017
Attn:   Darren S. Klein, Esq.
          Benjamin M. Schak, Esq.
Email: darren.klein@davispolk.com
          benjamin.schak@davispolk.com

12.6    **Term of Injunctions or Stays**

**Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

12.7    **Entire Agreement**

Except as otherwise indicated and except for the Purchase Agreement any agreements and documentation related thereto, and the Sale Order, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.8    **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at www.nysb.uscourts.gov.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

12.9    **Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

12.10    **Substantial Consummation of the Plan**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.11    **Dates of Actions to Implement the Plan**

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.12    **Deemed Acts**

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

*[The remainder of this page is intentionally left blank.]*

Empire Generating Co, LLC


By: _/s/ Garrick F. Venteicher_____
    Garrick F. Venteicher
    President & Chief Executive Officer


Empire Gen Holdco, LLC

By: _/s/ Garrick F. Venteicher_____
    Garrick F. Venteicher
    President & Chief Executive Officer


Empire Gen Holdings, LLC


By: _/s/ Garrick F. Venteicher_____
    Garrick F. Venteicher
    President & Chief Executive Officer


TTK Empire Power, LLC


By: _/s/ Garrick F. Venteicher_____
    Garrick F. Venteicher
    President & Chief Executive Officer

[Signature Page to Chapter 11 Plan]

**Schedule 1**

**<u>Eligible Equity Holders</u>**

TTK Power, LLC
Tyr TTK Power, LLC
Tyr Energy, Inc.
ITOCHU Corporation
ITOCHU International, Inc.
KPIC USA, LLC
The Kansai Electric Power Co., Inc.
TG TTK Power, LLC
Tokyo Gas America Power, LLC
Tokyo Gas America, Ltd.
Tokyo Gas Co., Ltd.