UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EMPIRE GENERATING CO, LLC, *et al.,* [1] | ) | Case No. 19-23007 (RDD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER (A) APPROVING BID PROCEDURES RELATING TO THE SALE OF SUBTANTIALLY ALL THE ASSETS OF EMPIRE GENERATING CO, LLC OR INTERESTS IN EMPIRE GEN HOLDINGS, LLC, (B) ESTABLISHING PROCEDURES IN CONNECTION WITH THE ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING NOTICE PROCEDURES, (D) APPROVING STALKING HORSE BID PROTECTIONS, AND (E) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Empire Generating Co, LLC ("Empire Generating"), Empire Gen Holdco, LLC ("Holdco"), Empire Gen Holdings, LLC ("Holdings") and TTK Empire Power, LLC ("TTK Empire, together with Empire Generating, Holdco, and Holdings the "Debtors"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules, for entry of an order (this "Bid Procedures Order"):  (i) approving the bid procedures in the form annexed hereto as **Exhibit 1** (as amended or modified, the "Bid Procedures") to be implemented in connection with a sale (the "Sale") of (a) all of the issued and outstanding membership interests of Holdings owned by TTK Empire (the "Interests"), which indirectly owns all of the issued and outstanding membership interests of Empire Generating, or, alternatively (b) all or substantially all of Empire

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, if applicable, are:  Empire Generating Co, LLC [3821], Empire Gen Holdco, LLC [3820], Empire Gen Holdings, LLC [4849], and TTK Empire Power, LLC [none].  The Debtors' corporate address is: Empire Generating Co, LLC, c/o Tyr Energy, LLC, 7500 College Blvd., Suite 400, Overland Park, Kansas 66210.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion, the Purchase Agreement, or the Bid Procedures, as applicable.  In the event of a discrepancy between the definitions contained in the Motion, the Purchase Agreement and the Bid Procedures, those contained in the Purchase Agreement shall control.

Generating's assets (the "Assets"), (ii) establishing procedures in connection with Empire

Generating's assumption, or assumption and assignment to the Successful Bidder or Backup

Bidder, of certain executory contracts and unexpired leases (each an "Assigned Contract" and,

collectively, the "Assigned Contracts") and the corresponding cure amounts (the "Cure

Amounts") required to be paid in connection with the assumption or assumption and assignment,

(iii) approving the notice procedures (the "Notice Procedures") to advise parties in interest and

Potential Bidders of the Bid Procedures, the auction of the Interests or Assets (the "Auction"),

the hearing on approval of the Sale (the "Sale Hearing"), and the Debtors' intent to assume and

assign to the Successful Bidder or Backup Bidder the Assigned Contracts and the corresponding

Cure Amounts, and (iv) granting related relief; the Court, having determined that the relief

provided herein is in the best interests of the Debtors, their estates, creditors and other parties in

interest and calculated to result in the highest or otherwise best offer for the Interests or Assets,

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and all objections and responses to the relief sought in the Motion to the extent

not withdrawn or resolved, including by the terms of this Order are hereby overruled; and due

and adequate notice of the Motion having been given under the circumstances; and upon the

record of the hearing to consider approval of the Motion and the arguments and representations

of counsel made, and the evidence proffered or adduced at such hearing, and the full record of

these Chapter 11 Cases; and after due deliberation thereon; and good and sufficient cause

appearing therefore:

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction over the Motion and the transactions contemplated

therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.       The Motion and the Bid Procedures comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

C.       The notice given by the Debtors of the Motion and the hearing with respect to the Motion constitutes proper, timely, adequate and sufficient notice thereof and complies with the Bankruptcy Code, the Bankruptcy Rules and applicable Local Rules, and no other or further notice is necessary, except as set forth herein with respect to the Auction and Sale Hearing.

D.       A reasonable opportunity to object or be heard regarding the relief provided herein with respect to the Motion has been afforded to parties in interest.

E.       The proposed Notice Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Bid Procedures to be employed in connection therewith, the Sale and the Sale Hearing. The Notice Procedures comply with Bankruptcy Rule 2002 and constitute sufficient notice to all interested parties and provide sufficient notice of the proposed Sale and related transactions.

F.       The Notice of Assumption or Assumption and Assignment is reasonably calculated to provide all counterparties to Assigned Contracts with proper notice of the potential assumption or assumption and assignment of their respective Assigned Contract(s) and any Cure Amount(s) relating thereto, provided, however, that the mere listing of any Assigned Contract on the Notice of Assumption or Assumption and Assignment does not require or guarantee that such Assigned Contract will be assumed or assumed and assigned, and all rights of the Debtors with respect to such Assigned Contracts are reserved.

G.       The Debtors have articulated good and sufficient business reasons for this Court to approve (i) the Bid Procedures, (ii) the scheduling of the Auction and the Sale Hearing, (iii)

the establishment of procedures to fix the Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption or assumption and assignment of the Assigned Contracts; (iv) the Break-Up Fee and Expense Reimbursement; and (v) related deadlines in connection with each of the foregoing. Such good and sufficient reasons were set forth in the Motion or have been described at the hearing, are incorporated by reference herein, and, among other things, form the basis of the findings of fact and conclusions of law set forth herein. The Debtors have demonstrated that the Bid Procedures are fair, reasonable and appropriate and are designed to maximize the value of the Debtors' estates.

H.    The Purchase and Sale Agreement by and between the Debtors and Empire Acquisition, LLC (the "Stalking Horse Bidder"), dated May 19, 2019 (the "Purchase Agreement") represents the highest or otherwise best offer the Debtors have received to date for Sale. Approval of the Stalking Horse Bidder as a "stalking horse" bidder and the Purchase Agreement as a "stalking horse" sale agreement is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment. The Purchase Agreement provides the Debtors with the opportunity to sell the Interests to preserve and realize the going concern value of the Debtors' business. The Purchase Agreement will enable the Debtors to secure a fair baseline price of Interests at the Auction and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties-in-interest.

I.    The Bid Protections, including, but not limited to, the Break-Up Fee and Expense Reimbursement, have been negotiated by the Stalking Horse Bidder and the Debtors, and their respective advisors, at arms' length and in good faith. The Bid Protections and Initial Minimum Overbid were a material inducement to, and express condition of, the Stalking Horse Bidder's willingness to submit a bid through execution of the Purchase Agreement that will serve as a

4

minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely. Without the Bid Protections, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Sale or otherwise be bound under the Purchase Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bid Procedures). The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that, given the circumstances, the best possible price for the Interests and/or Assets will be received. Accordingly, the Bid Procedures and the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

J.      The Bid Protections, including, but not limited to, the Break-Up Fee and Expense Reimbursement: (i) shall, if triggered, be deemed actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, which, for the avoidance of doubt, shall be junior in priority to the Adequate Protection Superpriority Claim (as such term is defined in the Cash Collateral Order); (ii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) are reasonable and appropriate, including in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to better and higher offers; and (iv) were necessary to induce the Stalking Horse Bidder to pursue the Sale and to be bound by the Purchase Agreement. The Debtors' decision to enter into the Purchase Agreement and grant the Bid Protections is a sound exercise of business judgment. The Bid Protections, including, but not limited to, the Break-Up Fee and Expense Reimbursement, are an actual and necessary cost and expense of preserving the Debtors' estates, and the Stalking Horse Bidder has provided an

actual and necessary benefit to the Debtors, their estates, and their creditors by providing a baseline value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood the Debtors will receive the best possible price and terms for the Interests or Assets.

K.      The Stalking Horse Bidder is not an "insider" or an "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, managers or controlling shareholders existed between the Stalking Horse Bidder and the Debtors. All negotiations between the Stalking Horse Bidder, the Debtors and their respective advisors with respect to the Bid Procedures have been in good faith, at arm's length, and without collusion.

L.      The Bid Procedures are reasonably designed to enable the Debtors to receive bids for the Interests or Assets and represent the best method for maximizing the realizable value of the Interests and Assets and serve to maximize the value of the Debtors' estates for the benefit of all of the Debtors' stakeholders and parties in interest.

M.      Entry of this Bid Procedures Order and the granting of the relief set forth herein are in the best interests of the Debtors, their estates, creditors and other parties in interest.

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion as it relates to the Bid Procedures and Bid Protections and the scheduling of and notice to be approved with respect to the Auction and the Sale Hearing is granted and approved as set forth in this Bid Procedures Order.

2.      All objections and responses to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.      The Bid Procedures, attached hereto as **Exhibit 1**, are incorporated herein and are approved in their entirety, and shall apply with respect to the sale of the Interests and/or Assets. The failure to specifically include or reference a particular provision of the Bid Procedures in the Motion or in this Bid Procedures Order shall not diminish or impair the effectiveness of such provision. The Debtors are authorized to take all actions necessary or appropriate to implement the Bid Procedures. Notwithstanding the foregoing, the consummation of the Sale shall remain subject to entry of a further order of this Court (the "Sale Order") which shall serve as an order approving the Sale of the Assets or Interests, as applicable, free and clear of any interests under section 363 of the Bankruptcy Code. In the event of an inconsistency between this Bid Procedures Order and the Bid Procedures, the Bid Procedures Order shall prevail.

4.      The Debtors are hereby authorized to pursue a Sale of the Interests and/or Assets in accordance with the Bid Procedures.

5.      Empire Acquisition, LLC is approved to be the Stalking Horse Bidder. The Stalking Horse Bidder is deemed a Qualified Bidder, and the Stalking Horse Bid as set forth in the Purchase Agreement is deemed a Qualified Bid.

6.      The Bid Protections are approved in their entirety, including, without limitation, the right to a Break-Up Fee of $1,000,000, plus an Expense Reimbursement for up to $2,000,000.

7.      The Debtors are hereby authorized and directed to pay the Break-Up Fee and Expense Reimbursement in accordance with the terms of the Purchase Agreement without further order of the Court. The Break-Up Fee and Expense Reimbursement shall constitute an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code with priority over all other administrative priority claims. The Debtors' obligation to pay the Expense Reimbursement and Break-Up Fee shall be

the joint and several obligations of the Debtors and shall survive termination of the Purchase

Agreement, dismissal or conversion of any of the Chapter 11 Cases, and confirmation of any

plan of reorganization or liquidation.

8.      The Prepetition Collateral Agent (as defined in the Cash Collateral Order) (or any

designated subagent, including the Stalking Horse Bidder) shall have the unqualified right to

"credit bid" on behalf of the Prepetition Lenders (as defined in the Cash Collateral Order) up to

the full amount of the Secured Obligations (as defined in the Intercreditor Agreement, and

whether arising prepetition or postpetition) in connection with the Sale.  Prepetition Lenders,

individually, lack standing to object to the Credit Bid set forth in the Stalking Horse Bid under

section 363(k) of the Bankruptcy Code or otherwise, based on the record before the Court as of

June 4, 2019.  Notwithstanding anything to the contrary in this Bid Procedures Order or the Bid

Procedures, every dollar of a credit bid shall be treated the same as a dollar from a cash bid, and

a cash bid shall not be deemed higher or otherwise better solely for the reason that it is a cash bid

and not a credit bid.

9.      The process for submitting Qualified Bids (as defined in the Bid Procedures) is

fair, reasonable, and appropriate and is designed to maximize recoveries for the benefit of the

Debtors' estates, their creditors and other parties-in-interest.  Any disputes as to the selection of a

Qualified Bidder and the Successful Bidder (as defined in the Bid Procedures) shall be resolved

by this Court.

10.     All information relating to the Interests or Assets provided to assist a person or

entity in evaluating whether to participate in the Auction is confidential.  Any person or entity

that is provided with such information (i) shall use such information solely for the purpose of

evaluating whether to participate in the Auction; (ii) shall not use such information for any other

purpose; (iii) shall hold such information in strict confidence; (iv) shall not, directly or indirectly,

disclose any of such information, subject to certain limited exceptions; (v) shall undertake reasonable precautions to protect the confidentiality of such information; and (vi) shall be solely responsible for any ramifications resulting from any disclosure of such information.

11.     As further described in the Bid Procedures, the deadline for submitting Written Offers for the Assets (the "Bid Deadline") is **July 3, 2019 at 5:00 p.m**. **(prevailing Eastern Time)**.

12.     The Debtors are authorized to conduct the Auction in the event they receive one or more timely and acceptable Qualified Bids.  If the Debtor does not receive any Qualified Bids (other than the Stalking Horse Bid), then (a) the Debtor will not hold the Auction; (b) the Stalking Horse Bidder will be deemed to be the Successful Bidder; and (c) the Debtor shall seek approval of the Purchase Agreement at the Sale Hearing.

13.     If there are two or more Qualified Bids received in accordance with the Bid Procedures, the Auction shall take place on **July 8, 2019 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Hunton Andrews Kurth LLP, 200 Park Avenue, New York, NY 10166, or such other place and time as the Debtors shall notify all parties in interest attending the Auction.

14.     The Auction shall be conducted in accordance with the Bid Procedures.

15.     The Auction will be conducted openly.

16.     Bidding at the Auction will be transcribed.

17.     The Sale Hearing shall be held before this Court on **July 19, 2019 at 10:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel and interested parties may be heard. Objections, if any, to the Sale of the Interests or Assets to any Successful Bidder and/or the relief requested in the Motion, other than the relief approved in this Order, must be in writing and filed with the Court **on or before June 26, 2019 at 5:00 p.m. (prevailing Eastern Time)**; provided, however, that objections solely stemming from the identity of the Successful Bidder (if different

9

than the Stalking Horse Bidder) may be filed at any time prior to the commencement of the Sale Hearing.

18.    The notice procedures described in subparagraphs (a) – (f) below are approved and shall be good and sufficient, and no other or further notice shall be required if given as follows:

a.    On or before three (3) business days after entry of  this Bid Procedures Order, or as soon thereafter as such parties can be identified, the Debtors will cause (a) a notice in substantially the form annexed hereto as **Exhibit 2** (the "Notice of Bid Procedures, Auction Date and Sale Hearing") and (b) a copy of the Bid Procedures Order to be sent by first-class mail, postage prepaid, to the following:  (i) the Office of the United States Trustee; (ii) counsel to the Prepetition Agent; (iii) all taxing authorities in the states where the Debtors are located, including the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtors to assert jurisdiction over the Debtors or which are reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the ownership of the Interests or Assets, or to have any known interest in the relief requested by the Motion; (iv) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (v) all persons known or reasonably believed by the Debtors to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Interests or Assets; (vi) the non-Debtor parties to the Assigned Contracts; (vii) all persons known or reasonably believed to have expressed an interest in acquiring the Interests or Assets within the last six (6) months; (viii) the United States Attorney's office; (ix) the Stalking Horse Bidder; (x) any applicable federal, state and local environmental agencies; and (xi) all parties to any litigation involving the Debtors.

b.    On or before three (3) business days after entry of this Bid Procedures Order, the Debtors will serve the Notice of Bid Procedures, Auction Date and Sale Hearing on all known creditors of the Debtors.

c.    On or before seven (7) days after entry of this Bid Procedures Order, subject to applicable submission deadlines, the Debtors will publish an abbreviated version of the Notice of Bid Procedures, Auction Date and Sale Hearing once in one or more regional and/or national publications that the Debtors, in their business judgment, deem appropriate.

d.    On or before three (3) business days after the entry of the Bid Procedures Order, the Debtors shall serve, by first class mail or hand delivery, a notice, substantially in the form attached hereto as **Exhibit 3**, of the potential assumption or assumption and assignment of the Assigned Contracts (the "Notice of Assumption or Assumption and Assignment") on all non-Debtor parties to the

10

Assigned Contracts. The Notice of Assumption or Assumption and Assignment (or a Supplemental Notice of Assumption or Assumption and Assignment (defined below)) shall (i) identify the amount of the Cure Amounts that the Debtors believe must be paid to cure all prepetition defaults under the Assigned Contracts, and (ii) provide instructions for the timing and procedure governing the filing of any objections to (a) the proposed Cure Amounts and (b) the proposed assumption or assumption and assignment of any Assigned Contract in connection with the Sale, as approved by the Bankruptcy Court in the Bid Procedures Order. In addition, if the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors or assumed by the Debtors and assigned to the Successful Bidder or Backup Bidder, as applicable, that are not included in the original Notice of Assumption or Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Assumption or Assumption and Assignment") to the applicable counterparties to such additional Assigned Contracts.

e.       In addition to the foregoing, electronic notification of the Motion, the Bid Procedures Order, the Notice of Bid Procedures, Auction Date and Sale Hearing, and the Notice of Assumption or Assumption and Assignment, will be posted on: (i) the main case docket on the Bankruptcy Court's electronic case filing (ECF) website; and (ii) the case management website maintained by the Debtors' claims and noticing agent, Omni Management Group, Inc., at https://omnimgt.com/EmpireGeneratingCo.

19.       The Notice of Bid Procedures, Auction Date and Sale Hearing, and the Notice of Assumption or Assumption and Assignment to be issued in connection with the proposed Sale, substantially in the forms annexed hereto as **Exhibits 2, and 3**, respectively, are approved.

20.       Unless the non-Debtor party to an Assigned Contract files an objection (the "Contract Objection") to (a) their scheduled Cure Amount and/or (b) to the proposed assumption or assumption and assignment of such Assigned Contract, as applicable, by **5:00 p.m. (prevailing Eastern Time) on June 26, 2019**, then such non-Debtor party (i) will be forever barred and estopped from objecting to the Cure Amount, and the Debtors, the Successful Bidder or Backup Bidder, as applicable, shall be entitled to rely solely upon the Cure Amount, and (ii) if the Assigned Contract is identified as being assumed by Empire Generating, or assumed and assigned to the Successful Bidder or Backup Bidder, as applicable, in connection with the Sale, will be deemed to have consented to the assumption or assumption and assignment of such

11

Assigned Contract and will be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder or the Backup Bidder, as applicable, or any other assignee of the relevant Assigned Contract that any additional amounts are due or defaults exist, or conditions to assumption or assumption and assignment must be satisfied, under such Assigned Contract. Notwithstanding the foregoing, as provided below, each non-Debtor party to such Assigned Contract shall retain the right to object, at the Sale Hearing, to the assumption or assumption and assignment of its Assigned Contract based solely on the issue of whether Empire Generating, the Successful Bidder or Backup Bidder, as applicable, can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

21.     If any non-Debtor party to an Assigned Contract, through a Contract Objection, challenges a Cure Amount (or asserts any other objection to assumption or assumption and assignment of an Assigned Contract), the Contract Objection must set forth the Cure Amount being claimed by the objecting party with appropriate documentation in support thereof, and specify (with appropriate supporting documentation) the factual and legal basis for any other objection.  Upon receipt of a timely filed Contract Objection, the Debtors, with the consent of the Successful Bidder or Backup Bidder, as applicable, are authorized, but not directed, to resolve any Contract Objection by mutual agreement with the objecting counterparty to any Assigned Contract without further order of the Court.  In the event that the Debtors and any objecting party are unable to resolve consensually any timely filed Contract Objection, the Court will resolve any such Contract Objection at the Sale Hearing or at such other hearing set by this Court.

22.     Notwithstanding anything to the contrary contained in this Bid Procedures Order, the Debtors, and the Successful Bidder or Backup Bidder, as applicable, may determine to exclude any Assigned Contract from the Sale no later than two (2) days prior to the Sale Hearing. The non-Debtor party to any contract that is removed from the list of Assigned Contracts will be

notified of such exclusion by written notice mailed within two (2) business days of such determination.

23.     Within one (1) day after the conclusion of the Auction (if an Auction is necessary), the Debtors will file a statement with the identity of the Successful Bidder and Backup Bidder for the Interests or Assets, as applicable, and the total price received for the Interests or Assets, as applicable, and serve such statement on the United States Trustee in satisfaction of Bankruptcy Rule 6004(f)(1).

24.     Within one (1) day after the conclusion of the Auction, the Debtors will serve a notice identifying the Successful Bidder and Backup Bidder to the non-Debtor parties to the Assigned Contracts that have been identified in such Successful Bid and Backup Bid.  The non-Debtor parties to such Assigned Contracts will have until the commencement of the Sale Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption or assumption and assignment of such Assigned Contract solely on the issue of whether the Successful Bidder or Backup Bidder, as applicable, can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

25.     Except as otherwise provided in this Bid Procedures Order, the Debtors, in their business judgment, further reserve the right as they may reasonably determine to be in the best interests of their estates, subject to the terms and conditions under the Bid Procedures, to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which Written Offers are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal, the Successful Bid, and which is the next highest or otherwise best proposal, the Backup Bid; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth herein with

respect to all Qualified Bidders to the extent permissible under the Bid Procedures; (f) impose additional terms and conditions with respect to all Qualified Bidders other than the Stalking Horse Bidder; (g) extend the deadlines set forth herein; (h) adjourn or cancel the Auction and/or Sale Hearing, provided that the Debtors shall use reasonable efforts to provide notice of adjournment or cancellation to all Qualified Bidders 24 hours before the commencement of the Auction; and (i) modify the Bid Procedures or withdraw the request to sell the Interests or Assets, as applicable, to the Successful Bidder or Backup Bidder, as applicable, at any time with or without prejudice. For the avoidance of doubt, the foregoing neither provides the Debtors with any rights to modify the Stalking Horse Bid without the written consent of the Stalking Horse Bidder nor the right to modify this Bid Procedures Order or the Bid Procedures in any manner that is inconsistent with the terms of the Cash Collateral Order, the Purchase Agreement, and the other terms of the Bid Procedures.

26.     For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in this Bid Procedures Order, the Bid Procedures or the Motion shall, or shall be construed to, in any way amend, impair, prejudice, alter or otherwise modify the terms of the Purchase Agreement or the Stalking Horse Bidder's rights thereunder, and the Purchase Agreement shall remain in full force and effect unless terminated in accordance with its terms.

27.     The 14-day stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived, for cause, and this Bid Procedures Order shall be effective immediately upon its entry.

28.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to deliver any notice provided for in the Purchase Agreement, including, without limitation, a notice terminating the Purchase Agreement, and allow the

Stalking Horse Bidder to take any and all actions permitted under the Purchase Agreement in accordance with the terms and conditions thereof.

29.    All time periods set forth in this Bid Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.    This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Bid Procedures Order.


Dated:  June 10, 2019
         White Plains, New York

                                        /s/Robert D. Drain
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Bid Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| EMPIRE GENERATING CO, LLC, *et al.,* [1] | ) Case No. 19-23007 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## BID PROCEDURES

These bid procedures (the "Bid Procedures") set forth the process by which Empire Generating Co, LLC ("Empire Generating"), Empire Gen Holdco, LLC ("Holdco"), Empire Gen Holdings, LLC ("Holdings") and TTK Empire Power, LLC ("TTK Empire", together with Empire Generating, Holdco, and Holdings, the "Debtors"), debtors and debtors-in-possession in the above-captioned chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), shall market to interested parties and conduct a sale (the "Sale") by auction (the "Auction") of (i) all of the issued and outstanding membership interests of Holdings owned by TTK Empire (the "Interests"), which indirectly owns all of the issued and outstanding membership interests of Empire Generating, or, alternatively, (ii) all or substantially all of Empire Generating's assets (the "Assets"). The Sale will be subject to bidding as set forth herein and subject to the approval of the Bankruptcy Court, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").

On May 19, 2019, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bid Procedures Relating to the Sale of Substantially all the Assets of Empire Generating Co, LLC, or Interests in Empire Gen Holdings, LLC, (B) Establishing Procedures in Connection with the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Approving Notice Procedures, (D) Approving Stalking Horse Bid Protections, and (E) Granting Related Relief; and (II)(A) Authorizing the Sale of Substantially all the Assets of Empire Generating Co, LLC or Interests in Empire Gen Holdings, LLC, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief* [Docket No.    ] (the "Motion"). The portion of the Motion requesting approval of the Bid Procedures and related relief was heard by the Bankruptcy Court on June 4, 2019. The Debtors' request for approval of the Sale and certain other matters relating to the Motion will be heard on July 19, 2019 at 10:00 a.m. (the "Sale Hearing").

On June 7, 2019, the Bankruptcy Court entered an *Order (A) Approving Bid Procedures Relating to the Sale of Substantially all the Assets of or Interests in Empire Generating Co., LLC*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, if applicable, are: Empire Generating Co, LLC [3821], Empire Gen Holdco, LLC [3820], Empire Gen Holdings, LLC [4849], and TTK Empire Power, LLC [none]. The Debtors' corporate address is: Empire Generating Co, LLC, c/o Tyr Energy, LLC, 7500 College Blvd., Suite 400, Overland Park, Kansas 66210.

*(B) Approving Notice Procedures, and (C) Granting Related Relief* (the "Bid Procedures Order"), thereby approving these Bid Procedures.

The Debtors have entered into a Purchase and Sale Agreement by and between the Debtors and Empire Acquisition, LLC (the "Stalking Horse Bidder"), dated May 19, 2019, a copy of which will be made available to interested parties and serve as the form of purchase agreement (the "Purchase Agreement") and as the basis for bids in connection with this process. Capitalized terms used in these Bid Procedures and not otherwise defined shall have the meanings ascribed to such terms in the Purchase Agreement.

The Purchase Agreement contemplates that the Stalking Horse Bidder will acquire all of the issued and outstanding Interests. The Debtors will consider competing bids seeking to acquire either the Interests or the Assets, to the extent such bids comply with these Bid Procedures and the Bid Procedures Order.

Any party desiring to obtain a copy of the Purchase Agreement, a form of Non-Disclosure Agreement (as defined below) or other information regarding the sale process may do so by contacting the Debtors' counsel or Debtors' financial advisor at:

| Debtors' Counsel | Debtors' Financial Advisor |
|---|---|
| Peter S. Partee, Sr.<br>Robert A. Rich<br>Michael S. Legge<br>**Hunton Andrews Kurth LLP**<br>200 Park Avenue<br>New York, New York 10166<br>(212) 309-1000<br>Ppartee@huntonak.com<br>Rrich2@huntonak.com<br>Mlegge@huntonak.com<br><br>- and -<br><br>Michael P. Richman<br>**Steinhilber Swanson LLP**<br>122 West Washington Avenue, Suite 850<br>Madison, Wisconsin 53703-2732<br>(608) 709-5998<br>mrichman@steinhilberswanson.com | Chip Cummins<br>Corey Gallagher<br>**RPA Advisors, LLC**<br>45 Eisenhower Drive<br>Paramus, New Jersey 07652<br>(201) 527-6652<br>ccummins@spaadvisors.com<br>cgallagher@rpaadvisors.com |

The Debtors provide these Bid Procedures for use by Potential Bidders (defined below) and Qualified Bidders (defined below) in submitting bids proposing a transaction to purchase the Interest or Assets, and, as necessary, qualifying for and participating in the Auction.

1.      Important Dates.

The following is a table setting forth key dates and deadlines with respect to the sale process:

| Event or Deadline | Date and Time |
|---|---|
| Bid Deadline | **July 3, 2019 at 5:00 p.m. (ET)** |
| Deadline to Object to Sale (for all objections other than stemming from the identity of the Successful Bidder (if different than the Stalking Horse Bidder)) | **June 26, 2019 at 5:00 p.m. (ET)** |
| Contract Objection Deadline (for all objections other than adequate assurance, including to any proposed Cure Amount) | **June 26, 2019 at 5:00 p.m. (ET)** |
| Selection of Qualified Bids | **July 5, 2019 at 12:00 p.m. (ET)** |
| Auction (if necessary) | **July 8, 2019 at 10:00 a.m. (ET)** |
| Deadline to File Notice Designating Successful Bidder | Immediately upon identifying and determine the Successful Bidder |
| Deadline to Object to Adequate Assurance of Future Performance and Raise Any Additional Cure Cost Objections | Up to the commencement of the Sale Hearing |
| Deadline to Object to the Sale based on the Identity of the Successful Bidder (if different than the Stalking Horse Bidder) | Up to the commencement of the Sale Hearing |
| Sale Hearing (subject to the Court's availability) | **July 19, 2019 at 10:00 a.m. (ET)** |

2.      Assets to be Sold.

The Debtors seek to sell the Assets or the Interests.

3.      Qualified Bidders, Non-Disclosure Agreements and Access to Data Room.

Any person or entity wishing to bid on the Assets (each a "Potential Bidder") must execute and deliver (unless previously delivered) to the Debtors a confidentiality and non-disclosure agreement (a "Non-Disclosure Agreement") in form and substance acceptable to the Debtors.

The Debtors, in their discretion, will afford a Potential Bidder who executes and delivers a Non-Disclosure Agreement due diligence access or such additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate, including, without limitation, access to the Debtors' confidential electronic data room, reasonable access, during normal business hours, to the Debtors' management, and access to all relevant information regarding the Interests and Assets reasonably necessary to enable a Potential Bidder to evaluate the proposed Sale; provided that, prior to accessing such information, any such Potential Bidder has evidenced the financial wherewithal and ability to consummate the Sale.  Debtors' counsel and financial advisors will coordinate all due diligence access and requests for additional information from such Potential Bidders.  The Debtors shall not be obligated to furnish any due diligence information after the conclusion of the Auction other than to the Successful Bidder (defined below) or any Backup Bidder.  Neither the Debtors (nor their members, partners or shareholders), their counsel nor their advisors are responsible for, or will bear liability with respect to, any information obtained by Potential Bidders in connection with due diligence.  Notwithstanding anything contained herein to the contrary, to the extent the Debtors believe that providing access to Potential Bidders to certain sensitive commercial information is not advisable, the Debtors, in their business judgment, will decide what, if any, diligence information to make available to a particular Potential Bidder, and neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever to any party.

A "**Qualified Bidder**" is any Potential Bidder that (a) delivers to the Debtors a Non-Disclosure Agreement, (b) demonstrates to the Debtors a reasonable certainty of the ability to close the Sale in a timely manner (including the financial capability to close the Sale and the ability to obtain any the necessary governmental, licensing, regulatory, or other approvals necessary for such Sale, if any), and (c) submits a Written Offer (as defined below) that satisfies all requirements of  a Qualified Bid as set forth below, provided, however, that, except for the requirements set forth in sections 4(viii) and 4(x)–4(xii) of these Bid Procedures, the Debtors may waive one or more requirements for a Qualified Bidder.  As promptly as practicable after a Potential Bidder delivers a Non-Disclosure Agreement and submits a Written Offer, and in any event not later than 12:00 p.m. (prevailing Eastern Time) one (1) business day preceding the Auction, the Debtors shall determine, and the Debtors shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder.  Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate the proposed Sale.  Notwithstanding anything to the contrary herein or in the Sale Order, the Stalking Horse Bidder shall be a Qualified Bidder.

4.      <u>Requirements for a Qualified Bid.</u>

In order to become a Qualified Bidder and participate in the Auction, if any, a Potential Bidder must deliver to counsel to the Debtors a written offer (each, a "<u>Written Offer</u>"), which is deemed to be a Qualified Bid.  To be deemed a "<u>Qualified Bid</u>", a Written Offer must meet each of the requirements listed below:

> (i)      <u>Delivery</u>:  Be delivered no later than 5:00 p.m. (prevailing Eastern Time) on July 3, 2019 (the "<u>Bid Deadline</u>").

4

(ii)    <u>Executed Agreement</u>:  Be accompanied by (i) a clean and duly executed and binding asset purchase agreement (together with the exhibits and schedules thereto, a "<u>Modified Purchase Agreement</u>"), and (ii) a marked Modified Purchase Agreement reflecting any variations from the Purchase Agreement, both of which shall be subject to section 4(xii) hereof.

(iii)    <u>Designation of Assumed or Assumed and Assigned Contracts and Leases and Adequate Assurance of Future Performance</u>:  Contain a list of any and all executory contracts and unexpired leases of Empire Generating that are to be assumed and assigned in connection with a Sale (each a "<u>Contract</u>" and, collectively, the "<u>Contracts</u>" and once assumed, or assumed and assigned, an "<u>Assigned Contract</u>") to the extent such list is not included in the Modified Purchase Agreement.  The Potential Bidder must also include written documentation sufficient to demonstrate the Potential Bidder's ability to provide adequate assurance of future performance for the benefit of the non-Debtor parties to the Contracts on the list, including, without limitation, (i) the specific name of the entity to whom the Contract will be assigned; (ii) if available, audited financial statements and annual reports of the proposed purchaser and any other assignee for the past three (3) years, including all supplements or amendments thereto; (iii) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, and any financial projections, calculations and/or pro formas prepared in contemplation of purchasing the assets, including the Assigned Contacts; (iv) all documents and other evidence of the proposed assignee's experience in the Debtors' industry; and (v) a contact person for the proposed assignee whom non-Debtor parties may contact directly in connection with adequate assurance of future performance.  Should the Potential Bidder be a newly formed entity (a "<u>Newco</u>"), written evidence of adequate assurance of future performance should also include when such Newco was formed, the relevant financial information of the equity sponsors of the Newco, how it will be financed together with evidence of firm financial commitments, and identify what credit enhancements will be available to guarantee the obligations under the Assigned Contracts.  Non-Debtor parties to the Contracts will have until the commencement of the Sale Hearing to object on adequate assurance grounds.

(iv)    <u>Proof of Financial Ability to Perform</u>:  Contain evidence of financing, access to funds or such other financial and other information that will reasonably allow the Debtors to make a

determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, which evidence is satisfactory to the Debtors, including, without limitation, such financial and other information setting forth adequate assurance under section 365 of the Bankruptcy Code in a form requested by the Debtors. Should the Potential Bidder be a Newco, such information shall be provided in respect of the Newco's equity sponsors of Newco.

(v)    <u>Identification of Parties to Participate</u>:    To the Debtors' satisfaction, (i) fully disclose the identity of each entity or person that will be bidding for the Interests or the Assets, as applicable, or otherwise participating in connection with such bid, (ii) the terms of any such participation, and if an entity has been formed for the purpose of acquiring some, or all, of the Interests or Assets, the parties that will bear liability for any breach by such entity, and (iii) the ability of such parties to obtain government, licensing or regulatory approval in connection with the consummation of any Sale.

(vi)    <u>Irrevocable</u>:  State that the Written Offer is irrevocable until (i) the closing of the Sale, if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Successful Bidder (as defined below), or (ii) if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Backup Bidder (as defined below), until the earlier of (x) two (2) business days after the closing of the transaction(s) by which all of the Interests or Assets that were subject to such Backup Bid (as defined below) have been transferred to one or more Qualified Bidders pursuant to these Bid Procedures and (y) ninety (90) days after the date of the Auction (the "<u>Backup Bid Expiration Date</u>").

(vii)    <u>No Break-Up Fee or Expense Reimbursement</u>:  Not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment; *provided, however*, that the Purchase Agreement with the Stalking Horse Bidder shall contain a break-up fee and expense reimbursement, as approved in the Bid Procedures Order.

(viii)    <u>Contingencies</u>:    Not contain any due diligence or financing contingencies.

(ix)    <u>Authorization to Consummate Sale</u>:    Provide evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body), if any, with respect to

the submission, execution, delivery and closing of the Modified Purchase Agreement to the Debtors' satisfaction.

(x)     <u>Purchase Price</u>:  Provide for a Purchase Price equal to or greater than the Purchase Price stated in the Purchase Agreement (which is comprised of (A) approximately $353,436,447.99 in principal amount plus all accrued and unpaid interest, fees and expenses accrued through the Closing Date other than the fees and expenses of the Prepetition Agent and its professional advisors, representing the Credit Bid Amount, and (B) $30,000, representing the Wind Down Amount), <u>plus</u> (x) the amount of the Break-Up Fee ($1,000,000), <u>plus</u> (y) the Expense Reimbursement ($2,000,000) (each as defined and set forth in the Purchase Agreement), <u>plus</u> (z) a minimum overbid amount of $1,000,000.00, which in the aggregate is a minimum overbid amount of $4,000,000. A Qualified Bid (other than those bids by the Stalking Horse Purchaser) must provide for a cash amount of the Purchase Price sufficient to repay all outstanding obligations under the Credit Agreement[2] that are credit bid pursuant to the Stalking Horse Purchase Agreement.

(xi)    <u>Good Faith Offer</u>: Constitute a good faith, bona fide offer to purchase all of the Assets or all of the Interests, as applicable.

(xii)   <u>Same or Better Terms</u>: Be on terms that, in their totality, are determined by the Debtors, in their business judgment, to be the same or better than the terms set forth in the Purchase Agreement in their totality.

(xiii)  <u>Good Faith Deposit</u>:  Provide a good faith deposit (the "<u>Good Faith Deposit</u>") submitted via federal wire transfer in immediately available funds in accordance with the wire instructions to be provided by the Debtors, or such other form as is acceptable to the Debtors, in an amount equal to 10% of the cash purchase price set forth in the Written Offer.

(xiv)   <u>Anticipated Timeline</u>:  Set forth the anticipated timeframe for (i) obtaining any required government, regulatory or other approvals, and (ii) consummating the Sale within the requirements of subparagraph (xvii) below.

---

[2]    "Credit Agreement" means that certain Credit and Guaranty Agreement, dated as of March 14, 2014 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof), by and among  certain of the Debtors and the lenders, agents, and the other financial institutions party thereto from time to time.

(xv) <u>Agreement with Bid Procedures, Provision of Additional Information and Submission to Bankruptcy Court Jurisdiction</u>: Include a written acknowledgement by such Potential Bidder that it (i) agrees to the terms of the Bid Procedures; (ii) agrees to provide such other information as may be reasonably requested in writing by the Debtors prior to the Auction; and (iii) confirms that the Potential Bidder submits to the jurisdiction of the Bankruptcy Court.

(xvi) <u>As-Is, Where-Is</u>: Include a disclaimer acknowledging that the Sale will be conducted on an As-Is, Where-Is Basis in accordance with section 8 of these Bid Procedures.

(xvii) <u>Closing Date</u>: Provide for a closing date (the "<u>Closing Date</u>") as set forth in section 10 of the Purchase Agreement.

Between the Bid Deadline and the Auction, the Debtors may (i) negotiate or seek clarification of any Written Offer from a Qualified Bidder, (ii) request information from the Qualified Bidder, (iii) engage in discussions with the Qualified Bidder, or (iv) take such other actions contemplated under these Bid Procedures. Without the consent of the Debtors, a Qualified Bidder may not amend, modify or withdraw its Written Offer. All changes to the form of Purchase Agreement reflected in the Modified Purchase Agreement will be evaluated by the Debtors and must be acceptable to the Debtors, in their business judgment. Any Good Faith Deposit accompanying a Written Offer that the Debtors determine not to be a Qualified Bid shall be returned promptly following such determination.

For the avoidance of doubt, the Stalking Horse Bid shall be deemed a Qualified Bid regardless of the foregoing requirements. Furthermore, a bid of the Stalking Horse Bidder at the Auction will be deemed a Qualified Bid notwithstanding that such a bid (A) entitles the Stalking Horse Bidder to a break-up fee and expense reimbursement on the same terms as the Stalking Horse Bid, (B) provides that all or a portion of the purchase price is payable in the form of a credit against all or a portion of the Secured Obligations (as defined in the Collateral Agency and Intercreditor Agreement dated as of March 14, 2014, among the Debtors, the Agent and the other parties thereto, and as calculated as of the date of the Auction), (C) does not include a Good Faith Deposit, and (D) does not include information set forth in clauses (iv), (v), (ix), (xii), or (xiii).

5. <u>Bid Deadline.</u>

All Qualified Bids must be received by each of the parties listed below prior to the Bid Deadline.

Debtors:          Garrick Venteicher
                  Empire Generating Co., LLC
                  c/o Tyr Energy, LLC
                  7500 College Blvd., Suite 400

Overland Park, Kansas 66210

| | |
|---|---|
| Debtors' Counsel: | Peter S. Partee, Sr.<br>Robert A. Rich<br>Michael S. Legge<br>Hunton Andrews Kurth LLP<br>200 Park Avenue<br>New York, New York  10166<br>e-mail:  ppartee@huntonak.com<br>        rrich2@huntonak.com<br>        mlegge@huntonak.com |
| | - and - |
| | Michael P. Richman<br>Steinhilber Swanson LLP<br>122 West Washington Avenue, Suite 850<br>Madison, Wisconsin 53703-2732<br>e-mail:  mrichman@steinhilberswanson.com |
| Debtors' Financial<br>Advisor: | Chip Cummins<br>Corey Gallagher<br>**RPA Advisors, LLC**<br>45 Eisenhower Drive<br>Paramus, New Jersey 07652<br>(201) 527-6652<br>ccummins@spaadvisors.com<br>cgallagher@rpaadvisors.com |

6.      <u>Determination of Qualified Bidders.</u>

The Debtors shall, by no later than 12:00 p.m. (prevailing Eastern Time) one (1) business day prior to the Auction, (i) determine, in their business judgment, whether a Potential Bidder is a Qualified Bidder, and (ii) notify each such Potential Bidder that its Written Offer is a Qualified Bid and that such Potential Bidder is a Qualified Bidder; and (iii) provide a copy of the Opening Qualified Bid (defined below) to each Qualified Bidder.

7.    <u>No Breakup Fee or Bid Protections.</u>

No Modified Purchase Agreement may include any breakup fee or expense reimbursement or other similar bid protections.

8.    <u>"As Is, Where Is".</u>

Except as otherwise provided in the Final Purchase Agreement (as defined below), the Sale of the Interests or Assets, as applicable, shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors or their estates except to the extent set forth in the Final Purchase Agreement as approved by the Bankruptcy Court.  Except as otherwise provided in the Final Purchase Agreement, all of the Debtors' right, title and interest in and to Interests or the Assets subject thereto, as applicable, shall be sold free and clear of all liens, claims, interests and encumbrances (collectively, the "<u>Liens</u>") in accordance with sections 363 and 365 of the Bankruptcy Code, with such Liens to attach to the net proceeds of the Sale.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all desired due diligence regarding the Interests and Assets prior to making its Qualified Bid, that it has relied solely upon its own independent review, investigation and inspection of any documents, the Interests and/or the Assets in making its Qualified Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Interests or Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid Procedures or, as to the Successful Bidder(s) and the Backup Bidder(s), the terms of the Sale(s) as set forth in the final form of the applicable Purchase Agreement or Modified Purchase Agreement(s) (the "<u>Final Purchase Agreement</u>") which shall be on terms mutually acceptable to the Successful Bidder and Backup Bidder, on the one hand, and the Debtors, on the other hand.

9.    <u>Auction.</u>

If the Debtors have determined that there are one or more Qualified Bidders (other than the Stalking Horse Bidder), the Debtors shall conduct an Auction to determine the highest and otherwise best Qualified Bid.  This determination shall take into account any factors the Debtors, in their business judgment, reasonably deem relevant and may include, among other things, the following:  (i) the amount of the consideration; (ii) the number, type and nature of any changes to the Purchase Agreement requested by a Qualified Bidder in its respective Modified Purchase Agreement; (iii) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtors; and (v) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof.

The Auction (if necessary) shall commence at 10:00 a.m. (prevailing Eastern Time) on July 8, 2019, at the offices of Hunton Andrews Kurth LLP, 200 Park Avenue, New York, New

York 10166, or such other place and time as determined by the Debtors, and continue thereafter until completed. The Debtors reserve the right to cancel or postpone the Auction.

Except as otherwise permitted in the Debtors' discretion, only the Debtors, the Agent, the Qualified Bidders, and any creditor or landlord that submits a written request to attend to the Debtors in advance of the Auction, and, in each case, their respective professionals shall be entitled to attend the Auction. Only a Qualified Bidder is eligible to participate in the Auction.

The Auction shall be governed by the following procedures:

(i)     Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

(ii)    Except as otherwise set forth herein (including the limitations on modification of criteria for Qualified Bids), the Debtors may waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are (i) not inconsistent with the Bid Procedures Order, the Purchase Agreement, the Cash Collateral Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Court for the Southern District of New York, or any order of the Bankruptcy Court entered in connection with these Chapter 11 Cases, (ii) disclosed to each Qualified Bidder, and (iii) designed, in the Debtors' business judgment, to result in the highest and otherwise best offer for the Interests or Assets.

(iii)   The Debtors will arrange for the actual bidding at the Auction to be transcribed. Each Qualified Bidder shall designate a single individual to be its spokesperson during the Auction.

(iv)    Each Qualified Bidder participating in the Auction must confirm on the record, at the commencement of the Auction and again at the conclusion of the Auction that it has not engaged in any collusion with the Debtors or any other Qualified Bidder regarding these Bid Procedures, the Auction or any proposed transaction relating to the Interests or Assets.

(v)     Prior to the Auction, the Debtors shall identify the highest and best of the Qualified Bids received (the "Opening Qualified Bid"). Subsequent bidding will continue in minimum increments valued at not less than $1,000,000 cash or in such amounts as to be determined by the Debtors, with the consent of the Stalking Horse Bidder, prior to, and announced at, the Auction. A Qualified Bid and any subsequent bids (other than those bids by the Stalking Horse Purchaser) must provide for a cash amount of the Purchase Price sufficient to repay all outstanding obligations under the Credit Agreement that are credit bid pursuant to the Stalking Horse Purchase Agreement. Each Qualified Bidder (other than the Stalking Horse Bidder) shall provide evidence of its financial wherewithal and ability to consummate the Sale at the increased Purchase Price.

(vi)    All Qualified Bidders shall have the right to, at any time, request that the Debtors announce, subject to any potential new bids, the then-current highest and best bid and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Debtors' announcement of the then-current highest and best bid.

(vii)    In the Debtors' discretion, all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Purchase Agreement or Modified Purchase Agreement, as applicable, at the Auction in accordance with the terms and provisions of these Bid Procedures; provided, however, that any such modifications to the Purchase Agreement or Modified Purchase Agreement, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors as determined by the Debtors, in their business judgment.

(viii)    Upon conclusion of the bidding, the Auction shall be closed, and the Debtors shall, as soon as practicable, (i) identify and determine in their business judgment the highest and best Qualified Bid for the Interests or Assets (a "Successful Bid") and the entity or entities submitting such Successful Bid (the "Successful Bidder"), (ii) advise the Qualified Bidders of such determination, (iii) require the Successful Bidder to deliver an executed Final Purchase Agreement, which reflects its bid and any other modifications submitted and agreed to during the Auction, prior to commencement of the Sale Hearing, and (iv) file with the Court a designation of Successful Bidder.

(ix)    In addition, the Debtors will determine, which Qualified Bid, if any, is the next highest and best Qualified Bid to the Successful Bid, and will designate such Qualified Bid as a "Backup Bid" in the event the Successful Bidder fails to consummate the contemplated Sale. A Qualified Bidder who submitted a Qualified Bid and is designated a Backup Bid is a "Backup Bidder". Each Backup Bid shall remain open and binding until the Backup Bid Expiration Date.

10.    Sole Qualified Bidder.

If, by the Bid Deadline, there is no Qualified Bidder other than the Stalking Horse Bidder, (i) the Stalking Horse Bid shall be deemed the Successful Bid and the Stalking Horse Bidder shall be deemed the Successful Bidder; (ii) the Debtors shall not hold an Auction; and (iii) the Debtors shall proceed at the Sale Hearing and seek approval from the Bankruptcy Court of the Stalking Horse Bid.

11.    Bid Protections.

In the event the Stalking Horse Bidder is not the Successful Bidder, the Debtors shall pay to the Stalking Horse Bidder, in consideration of its being the Stalking Horse Bidder and to

reimburse it for its expenses, the Break-Up Fee and the Expense Reimbursement, in each case to be paid in accordance with the terms and conditions set forth in the Purchase Agreement and as approved by the Bankruptcy Court in the Bid Procedures Order. No other bidder will be entitled to any expense reimbursement, break-up fee, termination or similar fee or payment.

12.     Sale Hearing.

The Sale Hearing will be held before the Honorable Robert D. Drain on July 19, 2019 at 10:00 a.m. (prevailing Eastern time), at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas St., White Plains, NY 10601-4140.  At the Sale Hearing, the Debtors shall present the results of the Auction, if one is held, to the Bankruptcy Court and seek approval of the Successful Bid and any related Backup Bid.

Following the Sale Hearing and entry of a Sale Order approving the Sale of the Interests or the Assets, as applicable, to a Successful Bidder, if such Successful Bidder fails to consummate the Sale for any reason, the Backup Bidder shall be designated the Successful Bidder and the Debtors shall be authorized to close such Sale with the Backup Bidder without further order of the Bankruptcy Court; provided, however, counterparties to any Contracts for which a Backup Bidder is deemed the new Successful Bidder shall receive written notice of the identity of the Backup Bidder being deemed the Successful Bidder, and shall have seven (7) days to object to the Backup Bidder's adequate assurance of future performance under any Contract to be assumed and assigned, with the Court to hold a subsequent hearing to determine any unresolved objections.  The Successful Bidder and Backup Bidder (if any) should be represented by counsel at the Sale Hearing.

13.     Consummation of the Purchase.

(a)     Closing Date; Good Faith Deposit

The Successful Bidder shall consummate the Sale contemplated by the Successful Bid (the "Purchase") on or before the Closing Date.  If the Successful Bidder successfully consummates the Purchase by the Closing Date, such Successful Bidder's Good Faith Deposit shall be applied to the purchase price of the Purchase.

If the Successful Bidder either: (i) fails to consummate the Purchase on or before the Closing Date, (ii) breaches the Final Purchase Agreement, or (iii) otherwise fails to perform, the Debtors shall, without further order of the Bankruptcy Court, deem such Successful Bidder to be a "Defaulting Buyer."

The Debtors shall be entitled to (a) retain the Good Faith Deposit as part of their damages resulting from the breach or failure to perform by the Defaulting Buyer and (b) seek all available damages from such Defaulting Buyer occurring as a result of such Defaulting Buyer's failure to perform in accordance with the terms of the Purchase Agreement or Modified Purchase Agreement, as applicable, and the Sale Order.

(b)    Backup Purchaser.

Upon a determination by the Debtors that the Successful Bidder is a Defaulting Buyer, the Debtors shall consummate a Sale with the Backup Bidder on the terms and conditions of the Backup Bid (the "Backup Purchase") without further order of the Bankruptcy Court.

If the Backup Bidder consummates the Backup Purchase, the Good Faith Deposit of such Backup Bidder will be applied to the purchase price of the Backup Purchase.  In the event that the Debtors seek to consummate the Backup Purchase with the Backup Bidder and such Backup Bidder (i) fails to consummate the Backup Purchase, (ii) breaches the Final Purchase Agreement, or (ii) otherwise fails to perform, the Debtors may, in their discretion, and without further order of the Bankruptcy Court, deem such Backup Bidder to be a "Defaulting Backup Buyer" and shall be entitled to (a) retain the Good Faith Deposit as part of their damages resulting from the breach or failure to perform by the Defaulting Backup Buyer, and (b) seek all available damages from such Defaulting Backup Buyer occurring as a result of such Defaulting Backup Buyer's failure to perform in accordance with the terms of the Purchase Agreement or Modified Purchase Agreement, as applicable, and the Sale Order.

14.    Return of Good Faith Deposits.

Good Faith Deposits shall be held in a non-interest bearing escrow account.  Except for those of the Successful Bidder and Backup Bidder(s), the Debtors shall promptly return the Good Faith Deposits of (i) all Qualified Bidders within two business days of conclusion of Auction; and (ii) the Backup Bidder after the Backup Bid Expiration Date.

15.    Consent to Jurisdiction and Authority as a Condition to Bidding

All Potential Bidders shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Bid Procedures, the Auction, or the construction and enforcement of any Purchase Agreement or any other document relating to the Sale; (ii) waived any right to jury trial connection with any disputes relating to the Bid Procedures, the Auction, the construction and enforcement of any Purchase Agreement or any other document relating to the Sale; and (iii) consented to the entry of a final order or judgment in any way related to the Bid Procedures, the Auction, or the construction and enforcement of any Purchase Agreement or any other document relating to the Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

16.    Reservation of Rights.

The Debtors shall retain all rights to any of their assets that are not subject to the Sale that is approved by the Bankruptcy Court at the Sale Hearing.

17.    Modifications.

Except as otherwise set forth herein (including the limitations on modification of criteria for Qualified Bids), the Bid Procedures may be modified by the Debtors, in any manner that is not inconsistent with or otherwise in contravention of the other terms of these Bid Procedures,

the Cash Collateral Order, or the Purchase Agreement, including, without limitation, (a) waiving the terms and conditions set forth herein with respect to any or all potential bidders, (b) imposing additional terms and conditions with respect to any or all potential bidders, (c) extending the deadlines set forth herein or the date for the Auction and/or Sale Hearing (which may occur in open court); or (d) amending the Bid Procedures as they may determine to be in the best interests of their estates; *provided that* all such modifications are disclosed to all Potential Bidders (if applicable) or Qualified Bidders (if applicable) prior to or during the Auction.

## __Exhibit 2__

**Notice of Bid Procedures, Auction Date and Sale Hearing**

Peter S. Partee, Sr.
Robert A. Rich
Michael S. Legge
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
ppartee@huntonak.com
rrich2@huntonak.com
mlegge@huntonak.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

Michael P. Richman
**STEINHILBER SWANSON LLP**
122 West Washington Avenue, Suite 850
Madison, Wisconsin 53703-2732
(608) 709-5998
mrichman@steinhilberswanson.com

*Proposed Co-Counsel for Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| EMPIRE GENERATING CO, LLC, *et al.,* [1] | Case No. 19-23007 (RDD) |
| Debtors. | (Jointly Administered) |

**NOTICE OF BID PROCEDURES, AUCTION DATE AND SALE HEARING**

**PLEASE TAKE NOTICE THAT:**

1.    On May 19, 2019, the above-captioned debtors and debtors in possession (the "Debtors") filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bid Procedures Relating to the Sale of Substantially all the Assets of Empire Generating Co, LLC, or Interests in Empire Gen Holdings, LLC, (B) Establishing Procedures in Connection with the Assumption or Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Approving Notice Procedures, (D) Approving Stalking Horse Bid Protections, and (E) Granting Related Relief* (the "Bid Procedures Motion");[2] *and (II)(A) Authorizing the Sale of Substantially all the Assets of or Interests in Empire Generating Co, LLC Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief* [Docket No. 6] (the "Sale Motion;" together with the Bid Procedures Motion, the "Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, if applicable, are:  Empire Generating Co, LLC [3821], Empire Gen Holdco, LLC [3820], Empire Gen Holdings, LLC [4849], and TTK Empire Power, LLC [none].   The Debtors' corporate address is: Empire Generating Co, LLC, c/o Tyr Energy, LLC, 7500 College Blvd., Suite 400, Overland Park, Kansas 66210.

[2]  Terms used but not defined shall have the meanings ascribed to such terms in the Bid Procedures Motion.

2.      By order dated June [●], 2019, the Bankruptcy Court approved the Bid Procedures Motion [Docket No. ●] (the "Bid Procedures Order").

3.      The Debtors are seeking bids for (i) all of the issued and outstanding membership interests of Empire Gen Holdings, LLC owned by TTK Empire (the "Interests"), which indirectly owns all of the issued and outstanding membership interests of Empire Generating Co, LLC, or, alternatively (ii) all or substantially all of the assets of Empire Generating Co, LLC (the "Assets"). The proposed sale will be free and clear of any and all liens, claims and encumbrances pursuant to section 363 of the Bankruptcy Code.

4.      All interested parties are invited to submit a Written Offer to purchase the Interests or Assets in accordance with the terms and conditions of the Bid Procedures attached hereto as **Exhibit A** and the Bid Procedures Order. The deadline to submit a Written Offer (the "Bid Deadline") is **July 3, 2019 at 5:00 p.m. (prevailing Eastern Time)**.

5.      Prior to the Bid Deadline, a Potential Bidder that desires to purchase the Interests or Assets shall deliver its Written Offer in accordance with the Bid Procedures.

6.      Pursuant to the Bid Procedures Order, in the event that the Debtors receive one or more Qualified Bids by the Bid Deadline (other than the Stalking Horse Bid), the Debtors shall conduct an Auction to determine the highest and otherwise best bid with respect to the Interests or Assets. The Auction shall commence at **10:00 a.m. (prevailing Eastern Time) on July 8, 2019** at the offices of Hunton Andrews Kurth LLP, 200 Park Avenue, New York, NY 10166, or at such other place and time as the Debtors shall notify all parties in interest attending the Auction. If no Qualified Bids are received by the Bid Deadline other than the Stalking Horse Bid, the Debtors shall seek approval of the Stalking Horse Bid at the Sale Hearing.

7.      Objections, if any, to the Sale of the Interests or Assets, as applicable, to any Successful Bidder and/or the other relief requested in the Motion, other than the relief approved in the Bid Procedures Order, must be in writing and filed with the Court **on or before June 26, 2019 at 5:00 p.m. (prevailing Eastern Time)**, provided that objections solely stemming from the identity of the Successful Bidder (if different than the Stalking Horse Bidder) may be filed at any time prior to the commencement of the Sale Hearing.

8.      The Sale Hearing shall be conducted by the Bankruptcy Court **on July 19, 2019, at 10:00 a.m. (prevailing Eastern Time)**, or on such other date as the Bankruptcy Court may direct. Requests for a copy of the Purchase Agreement or for any other information concerning the Motion or the Sale should be directed, by written request, to the Debtors' counsel and the Debtors' financial advisor at the contact information listed in the attached Bid Procedures.

Dated: June __, 2019
        New York, New York

_____
Peter S. Partee, Sr.
Robert A. Rich
Michael S. Legge

**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
ppartee@huntonak.com
rrich2@huntonak.com
mlegge@huntonak.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

- and -

Michael P. Richman
**STEINHILBER SWANSON LLP**
122 West Washington Avenue, Suite 850
Madison, Wisconsin 53703-2732
(608) 709-5998
mrichman@steinhilberswanson.com

*Proposed Co-Counsel for Debtors and Debtors-in-Possession*

**<u>Exhibit 3</u>**

**Notice of Assumption or Assumption and Assignment**

Peter S. Partee, Sr.
Robert A. Rich
Michael S. Legge
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
ppartee@huntonak.com
rrich2@huntonak.com
mlegge@huntonak.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

Michael P. Richman
**STEINHILBER SWANSON LLP**
122 West Washington Avenue, Suite 850
Madison, Wisconsin 53703-2732
(608) 709-5998
mrichman@steinhilberswanson.com

*Proposed Co-Counsel for Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EMPIRE GENERATING CO, LLC, *et al.,* [1] | ) | Case No. 19-23007 (RDD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF ASSIGNED CONTRACTS**

**PLEASE TAKE NOTICE THAT:**

    1.    On _____ [●], 2019, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order [Docket No. ●] (the "Bid Procedures Order") on the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (the "Debtors") (i) approving the bid procedures (as modified or amended, the "Bid Procedures") to be implemented in connection with a sale (the "Sale") of (i) all of the issued and outstanding membership interests of Empire Gen Holdings, LLC owned by TTK Empire (the "Interests"), which indirectly owns all of the issued and outstanding membership interests of Empire Generating Co, LLC ("Empire"), or, alternatively (ii) all or substantially all of the assets of Empire (the "Assets"), (ii) establishing procedures in connection with the potential assumption by Empire Generating Co, LLC ("Empire") or assumption and assignment by Empire to the Successful Bidder or Backup Bidder (each as defined in the Bid Procedures

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, if applicable, are:  Empire Generating Co, LLC [3821], Empire Gen Holdco, LLC [3820], Empire Gen Holdings, LLC [4849], and TTK Empire Power, LLC [none].    The Debtors' corporate address is: Empire Generating Co, LLC, c/o Tyr Energy, LLC, 7500 College Blvd., Suite 400, Overland Park, Kansas 66210.

19-23007-rdd    Doc 102    Filed 06/10/19    Entered 06/10/19 17:14:18    Main Document
Pg 38 of 40


Order) of certain executory contracts and unexpired leases (each a "<u>Contract</u>" and, collectively, the "<u>Contracts</u>" and once assumed, or assumed and assigned, an "<u>Assigned Contract</u>") and the corresponding cure amounts (the "<u>Cure Amounts</u>") to be paid in connection with the assumption and/or assignment, (iii) approving the notice procedures (the "<u>Notice Procedures</u>") to advise parties in interest and Potential Bidders (as defined in the Bid Procedures) of the Bid Procedures, the auction of the Interests or Assets (the "<u>Auction</u>"), the hearing on the Sale (the "<u>Sale Hearing</u>"), and the Debtors' intent to assume and/or assign to the Successful Bidder or Backup Bidder the Assigned Contracts and the corresponding Cure Amounts; and (iv) granting related relief.

2.      Pursuant to the Bid Procedures Order, the Debtors have indicated each Contract on **<u>Exhibit A</u>** annexed hereto which may become an Assigned Contract.  In addition, for each Contract, the Debtors have estimated the Cure Amounts owed under such Contract including the actual pecuniary loss to the non-Debtor party resulting from any defaults under such Contract including, but not limited to, all claims, demands, rights to refunds due to overpayments that the non-Debtor parties can assert under the Contracts whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to the Contracts calculated as of _____ [●], 2019.  The Cure Amount for an Assigned Contract represents the amount the Debtors believe must be paid, pursuant to section 365 of the Bankruptcy Code, to compensate the respective non-Debtor party in connection with the potential assumption and/or assignment of such Assigned Contract.

3.      Objections to the Cure Amounts or proposed assumption or assumption and assignment of an Assigned Contract, whether or not such party previously has filed a proof of claim with respect to amounts due under the applicable Contract, and/or objections to the potential assumption of such Contract, must be filed with the Bankruptcy Court, together with all documentation supporting such cure claim or objection, so as to be **<u>actually</u> <u>received</u>** by **June 26, 2019 at 5:00 p.m. (prevailing Eastern Time)**.  In the event no objection is timely filed with respect to a Contract, the non-Debtor counterparty to such Contract shall be deemed to have consented to the Cure Amount proposed by the Debtors.  Notwithstanding the foregoing, as provided below, each non-Debtor party to such Assigned Contract shall retain the right to object, at the Sale Hearing, to the assumption or assumption and assignment of its Assigned Contract based solely on the issue of whether the Successful Bidder or Backup Bidder, as applicable, can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

4.      The Debtors and the Successful Bidder or Backup Bidder, as applicable, reserve the right to designate which, if any, executory contracts or unexpired leases will be assumed and assigned.  Inclusion of a contract or lease on **<u>Exhibit A</u>** hereto does not indicate that the Successful Bidder or Backup Bidder, as applicable, will determine to have the Debtors assume and seek assignment of such Contract.  The Debtors may seek to have any Contract that is not designated to become an Assigned Contract, by the Debtors and the Successful Bidder or Backup Bidder, as applicable, be rejected at the Sale Hearing.

2

5.     The inclusion of a contract or lease on **Exhibit A** hereto shall not constitute or be deemed a determination or an admission by the Debtors that such document is in fact, an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

6.     A hearing to consider approval of the Sale and to determine the Cure Amounts and assumption or assignment issues for any non-Debtor parties to Contracts that filed timely objections and that have been designated to be assumed or assumed and assigned will be held on **July 19, 2019 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Robert D. Drain at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601-4140.  Objections to adequate assurance of future performance, and any additional Cure Amount objections, may be asserted up to the commencement of or at the Sale Hearing.

7.     Pursuant to the Motion, the Debtors are requesting an order from the Court (the "Sale Order") which will provide, among other things, that the Debtors' assignment of the Assigned Contracts to the Successful Bidder or Backup Bidder, as applicable, under the provisions of the Sale Order and any additional orders of this Court, and payment of any Cure Amount is authorized, so that no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted (a) to declare a default by the Successful Bidder or Backup Bidder, as applicable, under such Assigned Contract or (b) otherwise take action against the Successful Bidder or Backup Bidder, as applicable, as a result of Debtors' financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assigned Contract.  If the Court enters the Sale Order, each non Debtor party to an Assigned Contract hereby will be forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Successful Bidder or Backup Bidder, as applicable, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the closing of the Sale or, against the Successful Bidder or Backup Bidder, as applicable, any counterclaim, defense, setoff, recoupment, claim of refund or any other Claim asserted or assertable against the Debtors; (ii) imposing or charging against the Successful Bidder or Backup Bidder, as applicable, any rent accelerations, assignment fees, increases or any other fees as a result of Empire's assumption or assumption and assignment to the Successful Bidder or Backup Bidder, as applicable, of any Assigned Contract; or (iii) contesting the Cure Amount.

Dated: June __, 2019
     New York, New York

<div style="margin-left:40%">

Peter S. Partee, Sr.
Robert A. Rich
Michael S. Legge
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
ppartee@huntonak.com
rrich2@huntonak.com

</div>

mlegge@huntonak.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

- and -

Michael P. Richman
**STEINHILBER SWANSON LLP**
122 West Washington Avenue, Suite 850
Madison, Wisconsin 53703-2732
(608) 709-5998
mrichman@steinhilberswanson.com

*Proposed Co-Counsel for Debtors and Debtors-in-Possession*