Steven M. Abramowitz
Marisa Antos-Fallon
**VINSON & ELKINS LLP**
666 Fifth Avenue, 26th Floor
New York, NY 10103

Telephone:   (212) 237-0000
Facsimile:    (212) 237-0100

*Counsel to SPTIF Parent, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>EMPIRE GENERATING CO, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-23007 (RDD)<br><br>(Jointly Administered) |

# STARWOOD'S MOTION FOR ENTRY OF AN ORDER APPOINTING A MEDIATOR

SPTIF Parent, LLC ("Starwood")[2] as party in interest in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and creditors of the debtors in these Chapter 11 Cases (collectively, the "Debtors") move this Court for an Order appointing a mediator in the Chapter 11 Cases (the "Motion"). In support of the Motion, Starwood respectfully states as follows:

## Introduction

1.  Starwood is the holder of approximately 10% of the secured claims under the Debtors' prepetition credit facility. Prior to the Petition Date, Starwood was not directly

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are: Empire Generating Co, LLC [3821], Empire Gen Holdco, LLC [3820], Empire Gen Holdings, LLC [4849], and TTK Empire Power, LLC [none] (collectively, the "Debtors"). The Debtors' corporate address is: Empire Generating Co, LLC, c/o Tyr Energy, LLC, 7500 College Blvd., Suite 400, Overland Park, Kansas 66210.

[2] SPTIF Parent, LLC is the successor in interest to SPT Infrastructure Finance Sub-1, LLC and SPT Infrastructure Finance Sub-2, Ltd. Transfer Agreements for all claims held by SPT Infrastructure Finance Sub-1, LLC and SPT Infrastructure Finance Sub-2, Ltd. in these chapter 11 cases were filed on August 15, 2019. *See* Docket Nos. 237 – 244.

involved in the negotiations between the two principal creditors in this case, funds affiliated with Ares Management Corporation (collectively, "Ares"), holding approximately 34% of the secured claims, and funds affiliated with Black Diamond Capital Management ("Black Diamond"), holding approximately 51% of the secured claims.[3]  Since the Petition Date, as these Chapter 11 Cases have become increasingly contentious, Starwood has made efforts to try to help the parties discuss substantive points of disagreement with the goal of achieving a consensual exit from chapter 11 that would avoid continued litigation in this and other forums. As a meaningful creditor that has not been directly involved in the prepetition negotiations, Starwood is in a unique position to bridge the divide and facilitate a settlement in this matter. Starwood believes that these Chapter 11 Cases are now at a point where the assistance of a mediator can further this objective and result in a negotiated resolution of the few remaining issues.

2.     The fundamental dispute in these Chapter 11 Cases are the rights that Ares and Starwood (the "Minority Lenders") should have following any restructuring.  *See, e.g.* Docket. No. 190 at 2-3, 11-12.  The Minority Lenders believe that in any restructuring that extinguishes their secured debt claims in exchange for equity in a limited liability company in which the rights of equity are determined solely by the terms of the operating agreement, there should be certain fundamental minority protections regarding affiliate transactions, preemptive rights on new equity, information reporting, tag-along rights, and board fiduciary duties in order to avoid majority oppression.  To date, despite several requests, the Minority Lenders have not seen the corporate governance documents of the reorganized Debtors.  Without assurance on minimal

---

[3] Black Diamond is also supported by MJX Management LLC which holds approximately 4% of the credit facility claims.

2

minority governance protection as of the effective date of a plan, the Minority Lenders are forced to object to a nonconsensual restructuring under chapter 11 by all proper means.

3. On September 16, 2019, the Court is scheduled to hold a hearing on confirmation of the Debtors' chapter 11 plans, as well as a hearing on the Debtors' Sale Motion.[4] Those hearings were originally set for July 17, 2019, but have twice been adjourned. Although the Minority Lenders continue to proceed toward a contested hearing on September 16th due to various deadlines, Starwood firmly believes that a contested and nonconsensual restructuring under chapter 11 is not in the interests of the Debtors, Black Diamond, or the Minority Lenders. Since before the original July 17th hearing date and thereafter, Starwood has tried to use its status as an outsider to prompt negotiations and has sought to encourage the principals at Ares and Black Diamond to discuss the corporate governance dispute with the goal of reaching a business resolution.

4. At Starwood's suggestion, Ares reached out to Black Diamond with a written settlement proposal in early July. The proposal is straightforward and succinct, in the form of four one-line bullet points. On information and belief, Black Diamond has not responded to this proposal. Based on the substantive issues in dispute and what Starwood respectfully believes is the "market" bare minimum for contractual minority protection under Delaware law, Starwood believes that the areas of disagreement with respect to Ares' proposal (if any) are

---

[4] *See* "Motion for Entry of Orders (I) (A) Approving Bid Procedures Relating to the Sale of Substantially All of the Assets of Empire Generating Co, LLC, or Interests in Empire Gen Holdings, LLC, (B) Establishing Procedures in Connection with the Assumption or Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Approving Notice Procedures, (D) Approving Stalking Horse Bid Protections, and (E) Granting Related Relief; and (II) (A) Authorizing the Sale of Substantially All of the Assets of Empire Generating Co, LLC, or Interests in Empire Gen Holdings, LLC, Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption or Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief" (Docket No. 6) and "Notice Of Adjournment Of Hearing On Confirmation Of Debtors' Amended Joint Chapter 11 Plan" (Docket No. 222).

narrow. Starwood respectfully submits that if Ares and Black Diamond could have a meaningful discussion around these issues, agreement could be reached.

5. Starwood continues to believe that a negotiated resolution to the disputed corporate governance issues would be more cost-effective and beneficial to these chapter 11 estates than protracted litigation both before this Court and other forums. With the assistance of a neutral third party, the Minority Lenders, the Debtors, and Black Diamond, could work together to resolve what may be at most very narrow areas of disagreement between the parties. This mediation should be quick and take no more than a few hours. Starwood believes that mediation overseen by a Court-appointed mediator would provide a stable foundation on which to attempt to build a consensual resolution. The appointment of a mediator would allow all key constituents to come together in a single forum to express their views and work together towards resolution. Mediation could potentially spare the estates from incurring unnecessary litigation-related costs and could expedite the resolution of the central issue in these chapter 11 cases (and therefore the consensual emergence from chapter 11). By contrast, without the focus and assistance that a mediator can provide, Starwood is concerned that the dispute will by its own momentum lead ultimately to a contested sale/confirmation hearing and further litigation in this Court, continued appellate proceedings, and litigation in other forums even though the issues are very discrete and discernible.

6. Starwood and Ares have agreed to mediation to attempt to resolve these issues. Starwood has raised the possibility of mediation over the last few weeks and has also spoken to the Debtors, Ankura Trust Company and Black Diamond prior to filing this Motion. Although the Debtors, Ankura and Black Diamond have not explicitly consented prior to the filing of this

4

Motion, none of these key stakeholders have explicitly expressed objection to mediation. Based on the discussions, Starwood has reason to be optimistic that with the initiative of this Motion and the assistance of this Court, the other key stakeholders will welcome mediation as a potential means of breaking an unnecessary logjam. For the reasons described in this Motion, the Debtors respectfully request that the Court enter an order appointing a mediator in these Chapter 11 Cases.

## Relief Requested

7.  By this Motion, Starwood seeks entry of an order substantially in the form attached hereto as **Exhibit A** (the "Order"), appointing a mediator, which would allow the Debtors, the Minority Lenders, Ankura and Black Diamond as set forth in the Order (collectively, the "Parties") to participate in mediation.

## Jurisdiction and Venue

8.  The United States Bankruptcy Court for the Southern District of New York has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York,* dated February 1, 2012.

9.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The bases for the relief requested herein are section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 9019, Rule 9019-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and Rule 1.1 of the Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings for the Bankruptcy Court for the Southern District of New York (the "Mediation Procedures Rules").

## Background

11. Debtor Empire Generating Co., LLC ("Empire Generating") owns and operates a combined cycle dual-fuel power plant located in Rensselaer, New York. The remaining Debtors do not have business operations and are holding companies with an interest in Empire Generating or another holding company in its organizational structure.

12. On May 19, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of certain facts and circumstances surrounding these chapter 11 cases is set forth in the *Declaration of Garrick F. Venteicher* (Docket No. 3, the "First Day Declaration"), filed on the Petition Date.

13. The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). *See* Docket No. 34. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## **Basis for Relief**

14. Starwood seeks an order from the Court that will allow for prompt commencement of a mediation process. Starwood believes that a mediation should take place as soon as possible and, if feasible, before the scheduled confirmation and sale hearing.[5] Mediation offers a swift, cost-effective means of reaching consensus and provides a path for the parties in interest to engage in an organized process to negotiate a global resolution of the post-restructuring corporate governance issues that are the road block to a consensual restructuring in these Chapter 11 Cases. The Court has the power to direct a mediated resolution under section 105 of the Bankruptcy Code and Mediation Procedures

---

[5] Based on discussion with chambers, taking into account the Court's availability, the return date of this Motion has been set for September 16, 2019 which is currently the date set for the sale and confirmation hearing. Starwood is hopeful that no party will object to this Motion, thus allowing for possibly an earlier mediation pursuant to agreed order, or that the parties and the Court will agree to an adjournment of the sale and confirmation hearing in order to allow for mediation and hopefully obviate contested hearings.

6

Rule 1.1, which states that the "Court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee." *See* S.D.N.Y. Bankr. L.R. 9019-1; *see also In re Atl. Pipe Corp.,* 304 F.3d 135, 140 (1st Cir. 2002) ("There are four potential sources of judicial authority for ordering mandatory non-binding mediation of pending cases, namely, (a) the court's local rules, (b) an applicable statute, (c) the Federal Rules of Civil Procedure, and (d) the court's inherent powers."); *In re A.T. Reynolds & Sons, Inc.,* 424 B.R. 76, 85 (Bankr. S.D.N.Y. 2010), *rev'd on other grounds,* 452 B.R. 374 (S.D.N.Y. 2011) ("While it goes without saying that a court may not order parties to settle, this Court has authority to order the parties to participate in the process of mediation."); *Bruno v. Mona Lisa at Celebration, LLC (In re Mona Lisa at Celebration, LLC),* 410 B.R. 710, 716 (Bankr. M.D. Fla. 2009) (ordering mediation under section 105(a) where "both judicial economy and common sense dictate[d] that the parties, or if needed, the Court should resolve [the matter] in an organized and unified manner").

15. With mediation, the key creditor constituencies in these Chapter 11 Cases have an opportunity to come together in a centralized forum and determine quickly whether consensus is achievable.

16. Appointing a mediator at this juncture in these Chapter 11 Cases has the greatest chance of yielding the most benefit to the Debtors' estates, and provides the least expensive means to a resolution. Litigating all procedural and substantive issues related to the contested sale of TTK Empire pursuant to a credit bid and confirmation of the proposed non-impairment chapter 11 plan, would give rise to extensive additional professional fees and expenses, could delay the Debtors' emergence from these Chapter 11 Cases, and could lead to continued appellate practice and litigation in other forums,

thereby compounding such costs. At least a portion of these costs would be borne by the Debtors' estates, to the ultimate detriment of the Debtors' stakeholders. For this reason, a negotiated resolution in the relative near term—if achieved—would be of significant benefit to the Debtors' Chapter 11 Cases.

17.    Ultimately, Starwood believes that the requested mediation has little downside and will likely prove beneficial. Even if it does not yield a global resolution, mediation will not prejudice any of the Parties' rights and the Debtors and other Parties can (and will) continue to prepare for litigation in other forums, contested sale and confirmation hearings, and other disputes in the bankruptcy cases in parallel with mediation. At the very least, good-faith mediation discussions may inform the Parties as to the key issues or potentially narrow the issues in connection with these Chapter 11 Cases and in other relevant forums.

18.    For the reasons described in this Motion, Starwood respectfully requests that the Court enter an order appointing a mediator in these Chapter 11 Cases, which Starwood submits will facilitate productive settlement discussions between the parties and the ultimate resolution of contested issues.

## No Prior Request

19.    No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

| | |
|---|---|
| Dated: August 26, 2019<br>New York, New York | /s/ *Steven M. Abramowitz*<br><br>Steven M. Abramowitz<br>Marisa Antos Fallon<br>**VINSON & ELKINS LLP**<br>666 Fifth Avenue, 26th Floor<br>New York, NY 10103<br><br>Telephone:   (212) 237-0000<br>Facsimile:    (212) 237-0100<br><br>*Counsel to SPTIF Parent, LLC* |